6 N.J. Super. 235 (1950)
70 A.2d 880
TEXTILE WORKERS UNION OF AMERICA, CONGRESS OF INDUSTRIAL ORGANIZATIONS, PLAINTIFFS-APPELLANTS,
v.
FIRESTONE PLASTICS DIVISION, THE FIRESTONE TIRE AND RUBBER COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1950.
Decided January 27, 1950.
*236 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. David Jaffe argued the cause for appellants (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. Blair Reiley argued the cause for respondent (Messrs. Martin & Reiley, attorneys).
The opinion of the court was delivered by COLIE, J.A.D.
The plaintiff, Textile Union of America, C.I.O., and defendant, Firestone Plastics Division, The Firestone Tire and Rubber Company (hereinafter respectively referred to as Union and Firestone) entered into a collective bargaining agreement relative to the Paterson, New Jersey, plant of Firestone. The agreement was dated July 20, 1948, to remain in effect until April 20, 1949. We are not concerned with the renewal provisions for the reason that the plant closed permanently on November 5, 1948. The agreement embodied a clause, Article II (c), that "In the event *237 that any dispute or disputes regarding the interpretation or application of this Agreement shall not have been settled, through the regular grievance procedure outlined above, the matter shall then be referred to the impartial arbitrator agreed upon by mutual consent of the parties to this Agreement. All disputes not adjusted within two (2) weeks may be referred to arbitration." The Union, conceiving that there was a dispute with reference to vacation pay, filed a complaint under R.S. 2:40-12 to compel Firestone to proceed to arbitration. Firestone's answer denied that there was an arbitrable dispute and asserted that the Union had failed to perform a condition precedent to the right to proceed to arbitration in that it had not complied with the grievance procedure provided for in the agreement and further that the Union was in laches.
The main question before the court is whether or not there is a debatable question which should go to arbitration under Article II (c) previously quoted. The questions raised by the answer of failure to perform a condition precedent and laches are secondary to the main question. However, there is a preliminary question which requires decision, i.e., what is the function of the court in proceeding to compel arbitration? Obviously the court is not concerned with the merits of the alleged controversy. Its only concern is to determine whether this is an arbitrable question. The guide for the court to follow has been succinctly stated in International Ass'n. of Machinists v. Cutler-Hammer, Inc., 271 App. Div. 917, 67 N.Y.S.2d 317 (App. Div. 1947); affirmed, 297 N.Y. 519; 74 N.E.2d 464 (Ct. of Appeals 1947), to be that "While the contract provides for arbitration of disputes as to the `meaning, performance, non-performance or application' of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. It is for the Court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the Court must determine whether there is such a dispute. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there *238 cannot be anything to arbitrate and the contract cannot be said to provide for arbitration."
The contract provision, said to present an arbitrable issue under the circumstances here present, reads:

"Article VI  Vacations.
"(a) Each employee in the employ of the Company on May 1st of each year who has completed one year of service but less than five years of service prior to May 1st, shall be entitled to one (1) week's vacation with pay equivalent to two (2) per cent of their earnings for the preceding calendar year but not less than thirty-two (32) hours at straight time earnings. Vacation pay for employees completing the first year of service after January 1, 1948, but before May 1, 1948, will be two (2) per cent of their earnings for the preceding twelve (12) months period, but not less than thirty-two (32) hours at straight time earnings.
"(b) Each employee having completed more than five (5) years of service prior to May 1st shall be entitled to two (2) weeks vacation with pay equivalent to four (4) per cent of their earnings for the preceding calendar year but not less than sixty-four (64) hours at straight time earnings.
"(c) Returning veterans who left the employment of the Company in order to enter the Armed Forces are eligible for vacations on the same basis as if their time in the Armed Forces has been spent in active duty with the Company.
"(d) All employees laid off after March 1st but before May 1st shall receive vacation pay equivalent to two (2) per cent or four (4) per cent of their earnings for the previous calendar year as the case may be.
"(e) Vacations shall be taken between May 1st and September 1st unless conditions develop making it advisable to change this arrangement."
Every employee who was employed by Firestone between March 1 and May 1, 1948, received a vacation in accordance with the provisions of Article VI of the contract with the Union.
The contract was reduced to writing and we may not vary the terms thereof. Under Article VI no employee was entitled to vacation rights unless he was (a) "in the employ of the Company on May 1st" or (b) "laid off after March 1st but before May 1st." That the contract did not limit vacation rights solely to those employed on May 1st but extended rights to those laid off between March 1st and *239 May 1st is the clearest proof that the contracting parties had in mind only those two categories. No employee represented by the plaintiff could qualify under either (a) or (b) above quoted, and it is not within the power of an arbitrator or court to rewrite the contract. As was said in United Electrical, etc., v. Kidde, 136 N.J.L. 544 (Sup. Ct. 1948), "The parties here have reduced their differences to written agreement. This being so we will not vary the terms thereof and in effect write a new contract for them. There being no debatable question raised by the prosecutor, we have no alternative except to discharge the rule."
Finding, as we do, that there was no arbitrable dispute, it becomes unnecessary to deal with the other defenses raised.
The judgment is affirmed.