12 N.J. Super. 26 (1951)
78 A.2d 834
MACHINE PRINTERS BENEFICIAL ASSOCIATION OF THE UNITED STATES, A CORPORATION, PLAINTIFF-APPELLANT,
v.
MERRILL TEXTILE PRINT WORKS, INC., A CORPORATION OF NEW JERSEY, OR IN THE ALTERNATIVE, MERRILL TEXTILE PRINTERS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1951.
Decided February 15, 1951.
*28 Before Judges FREUND, PROCTOR and ROGERS.
Mr. Archibald Krieger argued the cause for the plaintiff-appellant (Mr. Isadore B. Miller, attorney).
Mr. Oscar Berman argued the cause for the defendant-respondent (Messrs. Cole, Morrill & Nadell, attorneys).
The opinion of the court was delivered by FREUND, S.J.A.D.
The plaintiff appeals from an order staying further proceedings until an arbitration is held under the provisions of an employment contract between the parties. The question is whether the controversy which has arisen is, under the agreement, arbitrable. The facts and the pertinent principles of law are not in dispute. Our concern is the application of the legal principles to the facts.
The defendant operated a textile printing plant in Paterson, New Jersey, until April 28, 1950, when it discontinued its business, terminated the employment of its employees and commenced the liquidation of its plant and other assets. On the premise that the collective bargaining agreement between the plaintiff union and the defendant employer constituted a contract of employment from January 3, 1949, to December 31, 1949, and thereafter for another year, at a stipulated annual salary, this suit was brought on June 22, 1950, on behalf of one of the employees, a journeyman printer, to recover unpaid wages from the time of cessation of employment and for damages for breach and repudiation of the contract of employment for the balance of the year. The defendant moved for arbitration contending that the termination of employment was a "discharge" and that the contract provided for arbitration in the event of disagreement between *29 the parties relating to discharge or wages not specifically covered by the agreement.
The relevant portions of the contract dated January 11, 1949, are as follows:
As to employment:
"Section III. Salary Guaranty. All members of the ASSOCIATION employed at the beginning of this period are hired on an annual basis and shall receive an annual salary payable in equal weekly installments as set forth in Section I of this agreement and any member employed after January 1 shall be hired on a pro rata basis for the balance of the contract year * * *.
Section XV. In extension of the understanding * * * there shall be no strike, work stoppage, slowdown, interruption or impeding of work for the duration of this agreement. * * *
Section XVIII. This agreement * * * shall be in full force and effect from and after the 3rd day of January, 1949, up to and including the 31st day of December, 1949; and it is further agreed by and between the parties hereto, that unless either of them shall give to the other sixty (60) days' notice in writing of an intention to terminate this agreement at the end of the term hereof, this agreement shall continue for a further period of one year, and thereafter from year to year unless either of the parties shall give to the other sixty (60) days' notice in writing of an intention to terminate this agreement at the end of any given year."
As to arbitration:
"Section IX. Whenever, during the life of this agreement, any question relating to the discharge of a journeyman printer, or to wages and working conditions which are not specifically covered by this agreement, cannot be agreed upon between representatives of the COMPANY and the ASSOCIATION, it is to be submitted for decision to a Board of Arbitration. * * *"
As to discharge:
"Section X. A journeyman printer may be discharged only for just cause; * * * If * * * the ASSOCIATION questions the sufficiency or fairness of the alleged cause of the discharge, the sufficiency or fairness of the cause of the discharge shall be determined in accordance with the procedure specified in Section IX hereof. If it be decided that the alleged cause of discharge is insufficient or unfair, said journeyman printer shall be reinstated in his employment, and shall be paid forthwith his wages in full for the time lost by him from his employment. If the alleged cause of the discharge *30 be found sufficient and fair, said journeyman printer shall be paid two full weeks' pay. Any journeyman printer discharged under the provisions of this Section must immediately be replaced by another journeyman printer for the remaining period of this contract. * * *"
In an affidavit filed in support of the motion for arbitration, Nathan Perles, secretary of the defendant employer, deposes that "At about the end of April, 1950, the operations of the firm were discontinued and the plant and equipment were put up for sale. * * * Gaetano Guidice was discharged, as stated in paragraph 5 of the first count of the complaint, on April 28, 1950, because the defendant corporation was discontinuing its active business. Offers were made on behalf of the corporation to pay those amounts which I and the other officers of the corporation thought properly due but said offers were refused. * * * This corporation has at all times been ready and willing to submit this dispute to arbitration as provided in said contract. The maximum amount of money that can be due to Gaetano Guidice under said contract is the sum of Two Hundred Fifty ($250.00) Dollars, the equivalent of two weeks pay. * * *" Paragraph 5 of the complaint alleged: "On the 28th day of April, 1950, without valid reason or cause and in violation of the terms and provisions of the employment contract aforesaid, the defendant corporation notified the member hereinabove mentioned that his services were no longer required. * * *"
No notice of termination on December 31, 1949, having been given by the employer and the parties having continued to perform under the contract until April 28, 1950, the plaintiff contends that employment should have continued for another year from December 31, 1949, on an annual basis, and that the discontinuance of the operations of the defendant prior thereto gave rise to a cause of action for wages and damages. The plaintiff further argues that the termination of employment by reason of the discontinuance of the business was not such a "discharge" as the parties contemplated or intended to submit to arbitration and accordingly that the issue is not arbitrable. The defendant on the other hand *31 takes the position that the discontinuance of the business constituted a "discharge" and that the controversy as to whether or not it was for cause is arbitrable within the contemplation of the parties, and that if the arbitrators should determine that the cause was sufficient and fair, its liability is limited to two full weeks' pay.
Although settlement of a controversy by arbitration is favored by the courts, "A submission to arbitration is essentially a contract. * * * The authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, supplemented by the pertinent provisions of the Arbitration Act, and no further. They have a right to stand upon the precise terms of their contract." Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1934); United Elec., &c., Local 411, C.I.O. v. National Pneumatic Co., 134 N.J.L. 349 (Sup. Ct. 1946); Gould Storage Battery Corporation v. United Elec., &c., Local 108, 137 N.J.L. 522 (Sup. Ct. 1948).
The scope of the collective bargaining agreement between the parties is for the court to decide. Where the arbitration of disputes over the application or interpretation of a collective bargaining agreement is provided, the court must determine whether a bona fide dispute exists, and this is a question of law. Therefore, whether the parties intended to submit the issue here involved to arbitration calls for decision by the court as to the scope of the collective bargaining agreement. Belding Hemingway Company v. Wholesale and Warehouse Workers' Union, Local 65, C.I.O., 295 N.Y. 541 (Ct. of Apps. 1946); General Electric Co. v. United Elec., &c., 300 N.Y. 262 (Ct. of Apps. 1949); Application of Graphite Metallizing Corporation, 271 App. Div. 839, 66 N.Y. Supp.2d 53 (Sup. 1946).
In the recent case of Textile Workers Union of America C.I.O. v. Firestone Plastics Division, The Firestone Tire and Rubber Company, 6 N.J. Super. 235 (App. Div. 1950), Judge Colie said: "The main question before the court is *32 whether or not there is a debatable question which should go to arbitration. * * * However, there is a preliminary question which requires decision, i.e., what is the function of the court in proceeding to compel arbitration? Obviously the court is not concerned with the merits of the alleged controversy. Its only concern is to determine whether this is an arbitrable question. The guide for the court to follow has been succintly stated in International Assn. of Machinists v. Culler-Hammer, Inc., 271 App. Div. 917, 67 N.Y. Supp.2d 317 (App. Div. 1947); affirmed, 297 N.Y. 519, 74 N.E.2d 464, (Ct. of Appeals, 1947), to be that `While the contract provides for arbitration of disputes as to the "meaning, performance, non-performance or application" of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. It is for the court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the court must determine whether there is such a dispute. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration.'"
The question which the defendant proposed to arbitrate does not concern a grievance between the employer and an employee, or a group of employees, but involves a dispute as to the extent of the liability of the defendant. The contention of the defendant is gleaned from the affidavit of Nathan Perles that its liability is the sum of $250, the equivalent of two weeks' pay, the sum fixed by Section X of the contract if the alleged cause of the discharge be found sufficient and fair. The plaintiff, however, asserts that the provision for arbitration relates to a discharge for conduct. In the instant case, the discharge was not for any action, conduct, failure or neglect on the part of the employee, but the termination of employment was for a cause which the contract did not specify, contemplate or anticipate, namely, a discontinuance of the business.
*33 A similar question has arisen before the New York courts. In B.F. Curry, Inc., v. Reddeck, 86 N.Y. Supp.2d 674 (Sup. 1949), the petitioner discontinued a department which resulted in the layoff of employees. The union served notice of intention to proceed to arbitration and the employer sought a stay. As in this case, the problem was whether the dispute was arbitrable under the collective bargaining agreement. The court held that not every controversy between an employee and an employer is arbitrable, but only those which fall within the scope of the collective bargaining agreement fairly construed, and that the arbitration clause dealing with discharges had no relevancy and could not be invoked.
In Application of Berger, (World Broadcasting System, Inc.), 78 N.Y. Supp.2d 528, (Sup. 1948), affirmed 81 N.Y. Supp.2d 195 (App. Div. 1948), the controversy arose out of the discontinuance of a department in the interests of economy, and the consequent termination of employment of those in the department. The union asserted that the termination was a layoff or discharge within the meaning of the collective bargaining agreement, and, as such, the proper subject of arbitration. The employer argued that the abandonment of a department was in the exercise of its right to determine its basic business policies under a specific provision of the agreement: "The management of World's operations and the direction of its staff, including the right to * * * layoff Employees * * * to accomplish a reduction in force reasonably required for the efficient operation of World are vested exclusively in World * * *." The court said, "* * * the limitation on the employer's right to discharge and to layoff employees was not intended to curtail the employer's right, in the exercise in good faith of its business judgment to discontinue a department or otherwise make a radical change in the method of its business operations. The purpose of the clauses invoked by the union was rather to prevent unjustified or discriminatory discharges under color of justifiable cause and, in the case of layoffs, to preserve seniority rights in the plant. * * * Reading the agreement as a whole, nothing is to be found in it which entitles *34 the union to treat as an arbitrable dispute one arising from the exercise by the employer in good faith of its right to make a change in the scope or method of operation of its business. * * * In final analysis the petitioner's position is a challenge of the employer's right to discontinue the department in the absence of attack on its good faith. The parties have not by the collective agreement committed the power to dispose of such a controversy to an arbitrator. It is settled that unless a dispute is, by the terms or fair implication of a collective agreement, within the scope of an arbitration clause, there is no right to have the dispute arbitrated."
In the Curry case, supra, the contract did not contain a specific clause such as was incorporated in the agreement in the Berger case, reserving to the employer the right to lay off employees in the efficient operation of its business. Referring to the Berger case, the court said in the Curry case, "The conclusion there was that the employer had not confided to arbitrators the right to review his business judgment in abandoning a department. True, in that case, the agreement contained a specific clause which gave emphasis to the employer's freedom in the domain of policy. In my opinion, however, that clause served merely to remove a contrary inference which might have arisen from other clauses. The agreement now before us contains no provision which makes such a saving clause necessary."
Here, too, the agreement does not contain a saving clause such as the one in the Berger contract. Moreover, the agreement provides that the members of the Association are "hired on an annual basis and shall receive an annual salary payable in equal weekly installments." Indeed, Section XV contemplated no work stoppage or interruption of the work for the duration of the agreement. The contract does not contain a stipulation for severance pay. That the parties did not contemplate or anticipate discontinuance of the business is also indicated by Section X which provided that if the arbitrators deem the cause of a journeyman printer's discharge insufficient or unfair, he is to be reinstated and paid his wages in full for the time lost from his employment. Further, a *35 discharged printer "must immediately be replaced by another journeyman printer for the remaining period of this contract." Obviously, discontinuance of the operation of the plant renders either reinstatement or replacement impossible.
As the case has been presented to us, we are not called upon to decide whether there is liability on the part of the employer to the employee by reason of the discontinuance of the operation of the business, and, if so, its extent. All we need decide is whether the controversy is arbitrable within the context of the collective bargaining agreement. We conclude that it is not and that the order directing arbitration was erroneous.