28 N.J. Super. 306 (1953)
100 A.2d 693
FEDERAL LABOR UNION 23393, AMERICAN FEDERATION OF LABOR, PLAINTIFF-RESPONDENT,
v.
AMERICAN CAN COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided November 13, 1953.
*307 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Thomas L. Parsonnet argued the cause for the respondent (Messrs. Parsonnet, Weitzman & Oransky, attorneys).
Mr. Thomas L. Morrissey argued the cause for the appellant (Messrs. Carpenter, Gilmour & Dwyer, attorneys; Mr. Milton A. Dauber, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
The trial court determined that the contract between the parties required the submission to arbitration *308 of a dispute that has arisen between them. American Can Company appeals, contending that no arbitrable issue exists.
The Can Company, as employer, and the union, as the representative of the company's employees, executed a collective bargaining agreement which was designed to govern wages, hours, working conditions and the like, in the plant.
Among other things, the contract provided:
"Article XIV.  Management. The management of its plants and the direction of the working forces is vested exclusively in the Company, and includes but is not limited to the right to hire, to promote and demote, to transfer; to discipline or discharge for proper cause; and to relieve employees from duty because of lack of work or for other legitimate reasons. The Company, in exercising its rights, shall observe the provisions of this agreement.

* * * * * * * *
"Article XVII.  Grievance Procedure. 17.1. A grievance shall be defined as a difference arising between an employee or the Union and the Company as to the meaning or application of this agreement."
The succeeding subparagraphs of section 17.2 set forth the machinery for the direct adjustment of grievances by the parties and their representatives. And subparagraph (e) stipulates that:
"In the event that the matter shall not have been satisfactorily settled, then it shall be referred to arbitration."
It appears from the facts that around the middle of July 1952 Joseph E. Connell, a supervisor of the department known as the End Department, sent for two employees thereof, Daniel Barton and Arthur Hilger, and told them of the company's dissatisfaction with their work and of the necessity for improvement.
At the same time and in accordance with the established practice, Connell made a memorandum of his action. One copy was filed in the employer's personnel records and another was sent to the union. The memorandum which is at the core of the dispute says:
*309 "This is notice that your work and attitude toward your work has not been satisfactory. Production on the equipment maintained by you has been consistently under par. You have made no effort to improve production on your equipment. If this condition continues to exist, you will be removed from the End Dept."
The document is entitled "Official Reprimand"; it contains a dotted line at the bottom, with "Employee's Signature" under the line. There the notation appears "Employee refused to sign." However, it does bear the signatures of Connell and T.L. Glanfield, Personnel Supervisor.
Such notations become part of an employee's work record and at least in some measure influence the future course of conduct of the employer toward him, if there are any further infractions of rules or unsatisfactory performance of work. It is evident also that in the event of subsequent discharge and a union claim of lack of justification therefor, such a dossier would provide substantial assistance in establishing good cause.
A dispute arose between the employer and the union, acting on behalf of Barton and Hilger, as to the significance of the memorandum, and the action it indicated the employer had taken. The union maintained that the employees had been disciplined. The employer contended that they had been reprimanded and warned.
Relying on the contractual provision limiting the right of the employer to discipline to the existence of proper cause therefor, and denying that any such cause existed, the union claimed that the dispute thus engendered constituted a grievance under article XVII. Resort to the intraplant measures prescribed by the agreement produced no results and the union demanded arbitration under subparagraph (e). The employer refused, insisting that its action constituted nothing more than a reprimand, and as such an absolute and unqualified prerogative of management.
An impasse having been reached, the union applied to the Law Division of this court under N.J.S. 2A:24-1 for an order compelling arbitration.
*310 Judicial hostility to arbitration as an invader of the exclusive jurisdiction of the courts has long since vanished. This is particularly true in labor relations problems where any process is encouraged which tends to settle disputes without resort to the economic war represented by strike or lockout. National Labor Relations Board v. Friedman-Harry Marks Clothing Co., Inc., 301 U.S. 58, 73, 74, 57 S.Ct. 645, 81 L.Ed. 921 (1936); Shirley-Herman Co. v. International Hod Carriers, 182 F.2d 806, 17 A.L.R.2d 609 (C.C.A. 2 1950); Lewittes & Sons v. United Furniture Workers of America, 95 F. Supp. 851 (D.C.S.D.N.Y. 1951); United Office & Professional Workers of America, C.I.O., v. Monumental Life Ins. Co., 88 F. Supp. 602, 607 (D.C.E.D. Pa. 1950). But however much the medium of arbitration is favored in these matters, courts are not at liberty to require submission to it unless the parties have agreed expressly to do so. The Appellate Division, in Machine Printers Beneficial Ass'n of United States v. Merrill Textile Print Works, Inc., 12 N.J. Super. 26 (1951), said:
"Although settlement of a controversy by arbitration is favored by the courts, `A submission to arbitration is essentially a contract. * * * The authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, supplemented by the pertinent provisions of the Arbitration Act, and no further. They have a right to stand upon the precise terms of their contract.'" (12 N.J. Super. at page 31)
Cf. Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386, 391 (Ct. App. 1929).
The problem here is defined sharply. The agreement gives the employer the right to discipline "for proper cause." If the action taken constituted discipline and a dispute exists as to whether it finds support in proper cause, then arbitration must be ordered. If, on the other hand, the action is properly characterized as a reprimand, then no arbitrable issue is presented.
*311 We recognize at the outset of our consideration of the case that care must be exercised to avoid infringing upon the normal prerogatives of management beyond the point to which they have been subjected by contract. It is clear that an employer has the right to reprimand or criticize the work performance of an employee and to make notes thereof for his records; plainly also, as the employer suggests, it has the right to evaluate the aptitude, interest, ambition and performance of an employee and make a record thereof. If this were not so and arbitration had to be engaged in for every such action, normal business operations would be well nigh impossible.
Where then is the line of demarcation between reprimand and discipline? "Reprimand," according to Webster's New International Dictionary (2d ed. unabridged), means "to reprove severely; * * * to censure formally, especially with authority." "Discipline" (as a noun) signifies "punishment; * * * retribution for an offense, especially in a subordinate; * * * control gained by enforcing obedience or order." As a verb, it means "to chastise, to impose a penalty upon." Although other connotations are set forth also, these have been selected as most appropriate to the present discussion.
It seems to us from a study of the agreement in the light of the various definitions, that the reasonable formula to be applied here in passing upon the employer's action is: reprimand plus penalty equals discipline.
Measuring the conduct by this formula produces the conclusion that these employees were disciplined. The memorandum handed to them for signature shows first, reprimand: "This is notice that your work and attitude toward your work has not been satisfactory"; then a finding and declaration of willful guilt of under-par production by them: "Production on the equipment maintained by you has been consistently under par"; and finally judgment and penalty for the guilt: "You have made no effort to improve production on your equipment. If this condition continues to exist, you will be removed from the End Dept." In other words, as *312 the penalty for willful under-par production, the output must be increased now and in default thereof the further penalty of removal from the department will be imposed.
Was there a par production per employee on the equipment referred to? If so, what was it, how was it fixed, and was the production of these employees, in fact, under-par? If there was no such standard, or if it was a completely arbitrary and unreasonable one, or if their output was not below the standard, did "proper cause" exist for the mandate that their production must increase at once?
On the basis of this analysis of the record, we conclude that an arbitrable issue exists and that such determination by the trial court was proper. However, the judgment is in two parts. First, it orders arbitration "as to whether employees Daniel Barton and Arthur Hilger were disciplined on or about July 17, 1952, for proper cause." Secondly, it directs arbitration "as to whether defendant for proper cause entered into its employment records relating to said employees a record that said employees have been guilty of improper conduct or an infraction of defendant's rules or regulations." This latter portion is too broad and must be excised. The arbitration is directed to the propriety of the discipline, that is of the act of discipline, not to the record of it.
As modified, the judgment is affirmed.
EASTWOOD, S.J.A.D. (dissenting).
The decisive question is: Whether the warning reprimand given the two employees and the notation thereof in the Company's records constitute disciplinary action?
The two pertinent provisions of the collective bargaining contract entered into between the parties are articles XIV and XVII. Article XIV recognizes the Company's right to discipline for proper cause and Article XVII provides for arbitration of any dispute as to the meaning or application of any provision of the agreement.
The union contends that the warning reprimand to the employees and the written record thereof constituted the imposition of discipline and it, therefore, seeks to arbitrate *313 the propriety thereof under articles XIV and XVII. The company insists that it merely warned the employees; that it did not discipline them in any manner whatsoever and that, therefore, there is no arbitrable question.
At the outset, the union's right to arbitration must be found in the provisions of the collective bargaining agreement. In a proceeding to compel arbitration, the first duty of the court is to construe the agreement and determine whether any arbitrable issue has been presented. In the case of Machine Printers Beneficial Ass'n of U.S. v. Merrill Textile Print Works, Inc., 12 N.J. Super. 26 (App. Div. 1951) (also cited in the majority opinion), where the controlling principles affecting arbitration under a collective bargaining contract are discussed, it was held that the court must first determine whether a bona fide dispute exists and that such a question is one of law. The court further held:
"* * * Therefore, whether the parties intended to submit the issue here involved to arbitration calls for decision by the court as to the scope of the collective bargaining agreement. Belding Hemingway Company v. Wholesale and Warehouse Workers' Union, Local 65, C.I.O., 295 N.Y. 541, 68 N.E.2d 681 (Ct. Apps., 1946); General Electric Co. v. United Elec., etc., 300 N.Y. 262, 90 N.E.2d 181 (Ct. Apps., 1949); Application of Graphite Metallizing Corporation, 271 App. Div. 839, 66 N.Y.S.2d 53 (Sup. Ct. 1946)."
Cf. Textile Workers Union of America, C.I.O., v. Firestone Plastics, etc., Co., 6 N.J. Super. 235 (App. Div. 1950); Newark Milk & Cream Co. v. Local 680, etc., 12 N.J. Super. 36 (App. Div. 1951); 24 A.L.R.2d 757, 758.
It would appear from the trial court's opinion that it treated the mere existence of a dispute as sufficient ground for arbitration, when it stated: "The action of the Company in making their notation on the record is the basis for the grievance. The grievance, as I see it, is a difference of opinion between the Union and its members and the Company," and "that any action on the part of the Company in its dealings with its workers is a proper matter for the question of alleged grievance, and therefore, as I have indicated, I think this is a matter that is subject to arbitration. *314 * * *" The guiding principles and controlling legal rule laid down in the Merrill case, supra, clearly indicate, however, that it is the language of the bargaining agreement which controls and it is the duty of the court to carefully scrutinize that language and to deny arbitration where the pertinent provision is so clear and unambiguous as not to call for arbitration. Merely because one asserts that there is a difference of opinion with respect to some act of the employer in its dealings with its employees and requests arbitration, does not justify arbitration. Arbitration should be allowed only where the language of the agreement clearly requires it.
It would seem to me that the connotation of the term "discipline" as used in article XIV is akin to that of "discharge" or an affirmative act striking at the right or eligibility for future employment. C.C.H. Dictionary of Labor Law Terms (2d ed., 1953). The definitions set forth in the majority opinion indicate that the lexicographical meaning of "discipline" is to penalize or impose retribution as distinguished from "reprimand" which is shown to connote censorship by one in authority.
Clearly, under the facts in the matter sub judice the defendant's acts, through its departmental supervisor, in interviewing two of its employees and advising them that their indifferent attitude toward their work was detrimental to department production and must in the future be corrected or they would face the possibility of removal from the department are not, in the absence of some affirmative step toward removal or punishment, acts of discipline. We may well ask where is there any act of punishment, retribution or the imposition of a penalty? I find none. In fact, it is asserted without denial that the work habits of the employees improved promptly following the reprimand; that no disciplinary action has ever been taken against either of them, and that their employment continued without incident from the time of the interview in question.
In my opinion, the criticized acts of the employer were merely those normally incident to the management of its *315 plant and the direction of its working force. In view of the clear language of the agreement, the position taken by the union is not tenable. To give effect thereto, it would mean that any official expression of dissatisfaction, oral or written, by the employer's representative concerning an employee's work habits would become the subject of arbitration. If at the whim of the employee or the union, a mere warning reprimand could be made the subject of arbitration, harmonious relations between employer and employee  a goal universally sought today  would surely be disrupted. The exclusive authority given the employer under article XIV, providing that: "The management of its plants and the direction of the working forces is vested exclusively in the Company, and includes but is not limited to the right to hire, to promote and demote, to transfer; to discipline or discharge for proper cause; and to relieve employees from duty because of lack of work or for other legitimate reasons," would become meaningless. It would vitiate the employer's rights of management of its plant and employment forces and be tantamount to a compulsory forfeiture of supervision and control of production by the company, a divestiture not intended by the employment agreement.
I favor a reversal of the judgment.