38 N.J. Super. 106 (1955)
118 A.2d 70
STANDARD OIL DEVELOPMENT COMPANY EMPLOYEES UNION, A NON-PECUNIARY CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, AND MAURICE A. O'KEEFE, GEORGE T. KREVETSKE, EDWARD F. KOBLY, THOMAS J. LOGUE, ELWOOD VICK, WILLIAM JAMES, INDIVIDUALLY AND JOINTLY, PLAINTIFFS-RESPONDENTS,
v.
ESSO RESEARCH & ENGINEERING COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1955.
Decided November 14, 1955.
*109 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frederick E. Riethmuller argued the cause for the respondents (Mr. Jacob Friedland and Mr. John F.X. Landrigan, attorneys).
Mr. William L. Dill, Jr., argued the cause for the appellant (Messrs. Stryker, Tams & Horner, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
The problem presented for determination on this appeal is whether the Law Division was correct in holding that an arbitral issue exists under the collective bargaining agreement entered into between the plaintiff Standard Oil Development Company Employees Union and defendant Esso Research & Engineering Company.
On July 1, 1946 the company (then known as Standard Oil Development Company) and the union entered into an agreement which recognized the union as the exclusive representative of certain of the employees and which undertook generally to regulate wages, hours and other conditions of employment.
The contract and its amendments to March 20, 1953 established certain job classifications. Among them were Senior Laboratory Assistant, and Senior Operator, Operator and Operator Helper within the Operator group. An affidavit of the company's Director of Labor Relations recites that the work of persons in these categories was connected with research and experiment in the development of products and processes. The operations "required considerable technical knowledge, skill, ingenuity and versatility, and some of the persons in such classifications had demonstrated considerable ability along those lines."
The affidavit further says that in December 1953 the company, being desirous of giving more recognition to such *110 outstanding ability, proposed to the union that the agreement be amended to create a Technician Group, composed of Technician II, Technician I and Senior Technician, into which would be placed Operator Helper, Operator, Senior Operator and those Senior Laboratory Assistants engaged in work similar to that performed by the Operator group. It further proposed that Senior Operators, Operators and Senior Laboratory Assistants who qualified, be considered "on an individual basis for appointment, at a salary to be fixed on a merit basis, as Senior Technicians * * *."
A concord was reached on the subject and a formal amendment of the 1946 agreement, to be retroactive to December 19, 1953, was executed on March 12, 1954.
A salary schedule was included for the new Technician classifications. Specific wage ranges for the Technician II and I groups were set out but the Senior Technician specification for salary was simply "merit."
Reference to certain other portions of the revised contract is necessary. Section 1 of Article III as amended, hereinafter called the "Promotions Clause," reads as follows:

"Section 1  Promotions.
A. Promotions will be made on the basis of the ability of an employee to best meet all the requirements of the job classification. The determination of such ability shall be made by the Company. In its determination of ability, consideration shall be given by the Company to experience as reflected by total credited service on the following basis:

* * * * * * * *
2) b) For promotion from one classification within the Technician Group into a higher classification within such group, longest total credited service in the next lower classification in the division shall be determining, but if this is equal, longest total credited service with the Company shall be determining, but if this is equal, longest total credited service with Standard Oil Company (N.J.) and its affiliates and subsidiaries shall be determining. * * *." (Emphasis added.)
Article IV of the original contract provides:

"Sec. 1  Job Classifications.
A. The Company has established job classifications for all jobs covered by this agreement. Such classifications are shown on *111 Exhibit II. [Hereinafter referred to as the "Job Classification Schedule."]
B. Promotions from lower to higher classifications will be made by the Company as vacancies or openings occur and in accordance with provisions of Article III herein above." [The "Promotions Clause."]
The Job Classification Schedule was amended by the addition of a new subsection 3D entitled "Technician Classifications." It is located at the very end of the long amendatory agreement. This subsection set out in separate paragraphs a definition of the duties of Technician II, Technician I and Senior Technician, and the requirements for entering each classification. With respect to Senior Technician, the following appears:

"1. Definition of Duties.
May be called upon to perform any type of experimental work involved in the efficient operation of the unit or group with which the employee is associated, including the operation of any type pilot plant unit, engine test stand, or other research equipment, and assisting Professional or other Laboratory personnel in carrying out the Laboratory work required for the accomplishment of technical problems. May supervise the work of Technician I or Technician II employees if the equipment requires two or more men per shift. Takes full responsibility for the operation of the above described equipment on the basis of only general instructions and a minimum of technical supervision.

2. Requirements for entering classification.
Appointment to this classification is reserved for outstanding Technician I personnel who have received for at least one year the top salary of the classification. The appointment is made strictly on the basis of merit and at the discretion of the Company, and is available to only those who have demonstrated conclusively by their performance over a period of years on a variety of equipment their possession of special skills and abilities as well as the mental flexibility and versatility necessary to carry out the top grade of experimental work required by the Company of men in their field." (Emphasis added.)
It appears without contradiction that during the negotiations for the creation of the Technician Group the company, at the request of the union, furnished the names of the employees it intended to designate as Senior Technicians. The plaintiffs were not among those listed. On March 12, 1954, the day on which the amendatory document was signed, *112 formal grievances were filed by the plaintiffs asserting that they were "by-passed for promotion into a higher classification * * * in violation of Section 1, Article III * * *," the Promotions Clause of the collective bargaining compact.
The matter was processed through the various steps of the grievance procedure by the company. It explained in some detail to each of these plaintiffs why he had not been nominated for the top technician category. This was done despite its basic position that such appointments were controlled by the requirements therefor established by mutual consent in subsection D of section 3 of the Job Classification Schedule and subject to those requirements rested in the discretion of the company.
Upon the rejection of the grievances a demand for arbitration was made under Article VIII, Section A of the agreement, which stipulates:
"Disputes as to the interpretation of the terms and provisions of this Agreement or any question of fact, arising out of an alleged violation of the terms and provisions of this Agreement, if not settled through the procedure established in this Agreement, may be submitted to a Board of Arbitration."
The company declined to go to arbitration asserting that no arbitral question existed since appointment to the Senior Technician Group rested in its discretion alone.
Thereupon the complaint herein was filed under N.J.S. 2A:24-3 to obtain an order compelling arbitration. The question sought to be arbitrated was specified thus:
"Has the defendant violated Article VIII [the Arbitration Clause, supra], Article III, section 1, as amended on March 12, 1954 [the Promotions Clause], and that part of said amendment which follows (d)  Technician Classification on page 16 of said amendment of the Labor Agreement referred to in the complaint [the Job Classification Schedule] by the defendant's failure to promote to Senior Technician the individual plaintiffs named in the complaint?" [Insertions ours]
The general nature of the interrogatory makes it very difficult to determine just what the union wishes to subject to arbitrage. However, it is important to note that no *113 charge of bad faith in the making of the selections for promotion is made against the company.
The trial court declared that under section 3D of the Job Classification Schedule the discretion of the company with respect to the promotion of personnel to Senior Technician was limited to the determination of whether and when there would be such promotions and how many there should be; but once having decided to make them, it was obliged to do so on the basis of seniority as prescribed by subsection 2(b) of the Promotions Clause, if the candidates otherwise possessed the qualifications required. From the statements of the court, we deduce his actual holding to have been that an arbitrable question exists as to whether seniority of employees in the Technician I category is an element which must be considered by the company in deciding upon promotion to Senior Technician. More specifically, since the Promotions Clause which regulates advancements generally, prescribes that they shall be made according to ability as determined by the company with consideration given to total credited service on a specified standard, and since subsection 2(b), supra, fixes the test for promotion from one classification to another within the Technician classification in terms of certain periods of service, he held it to be reasonably arguable that the company is obligated contractually to give consideration to seniority in making selections for Senior Technician. And in effect the ruling was that a debatable question exists with respect to whether the discretion of the company on the subject of such appointments is regulated by section 3D2 of the Job Classification Schedule alone, without regard to seniority.
In the oral argument before us, the lines of the dispute as to whether arbitration should be ordered, were drawn more clearly than appears to have been the case in the trial court. Although the plaintiffs did not abandon other arguments set out in their brief, they took the position that subsection 2(b) of the Promotions Clause makes it mandatory for the company to promote into the Senior Technician class those employees who have the longest credited service; they say *114 that at least the question is fairly debatable. The company on the other hand maintains that within the limitations of section 3D2 of the Job Classification Schedule, it has sole discretion as to appointment of Technician I men to Senior Technician.
The ground upon which the courts will intrude in a matter of this kind has been clearly established. The duty of the employer and the union to arbitrate arises solely from their contract and the extent to which either can be required to resort to the process, is measured by the language they employed in reducing their understanding to writing. Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1935); Standard Refinery Union v. Esso Standard Oil Co., 31 N.J. Super. 548 (App. Div. 1954); Federal Labor Union 23393, A.F.L. v. American Can Co., 28 N.J. Super. 306 (App. Div. 1953); Machine Printers Beneficial Ass'n of United States v. Merrill Textile, Inc., 12 N.J. Super. 26 (App. Div. 1951); Textile Workers' Union of America C.I.O. v. Firestone Plastics Division, Firestone Tire & Rubber Co., 6 N.J. Super. 235 (App. Div. 1950). So the judicial inquiry is, (1) did the parties agree to arbitrate, and (2) what did they agree to submit to arbitration?
In the present situation, as set forth above, they stipulated that "disputes as to interpretation of the terms and provisions" of the collective bargaining agreement would be disposed of in that fashion. But the mere assertion of a dispute as to the meaning of certain clauses thereof or the assertion of a connotation of language appearing therein, obviously at odds with the plain meaning thereof, does not make an arbitrable issue. Textile Workers' Union of America C.I.O. v. Firestone Plastics Division, Firestone Tire & Rubber Co., supra; International Ass'n of Machinists, Dist. No. 15, Local No. 402 v. Cutler-Hammer, Inc., 271 App. Div. 917, 67 N.Y.S.2d 317 (App. Div. 1947), affirmed 297 N.Y. 519, 74 N.E.2d 464 (Ct. App. 1947), 47 Colum. L. Rev. 1243.
The function of the courts is to determine whether there is a bona fide dispute as to meaning. The purpose of *115 interpretation is to discover meaning. If the significance of the language is clear, then the allegation of a contrary meaning is frivolous and without legal consequence. On the other hand, if the language employed is reasonably susceptible of more than one import or if certain sections of the agreement may be said reasonably to be ambiguous when considered in relation to each other, or if it is fairly arguable that clauses apparently pertaining to the same subject matter are in conflict, then the dispute must be referred to arbitration.
A further word of caution and explanation should be said as to the nature of the judicial intervention. The reluctance of the courts to sanction the arbitration process is a relic of the past. Now it is recognized as an integral part of our economic life and welcomed as a practical and expeditious means of disposition of industrial disputes. Consequently, when an agreement has been made between management and labor for the regulation of wages, hours and conditions of employment, and as an incident thereof they have stipulated to resort to arbitration in the event of dispute as to the interpretation of language employed therein, the judiciary will study the nature of the dispute with the utmost liberality and freely exercise the power authorized by the Legislature (N.J.S. 2A:24-3, supra) to compel arbitration in order to effectuate the practical purpose of the signatories.
It is not our intention to express the view that before the parties will be ordered to the forum of arbitration, the judicial mind must find merit in an asserted interpretation. The test being expounded is that arbitration will be directed when it appears to the mind of the ordinary layman that the particular language involved is reasonably open to the connotation contended for. If the contention proposed is such that no ordinary layman, acting in good faith, would seriously advance it, then our statutory power will not be exercised.
In reaching a decision as to the existence of such a dispute, ordinary canons of construction of contracts are applied. Even though collective bargaining contracts may *116 be said to resemble patchwork quilts at times through the process of amendment, the basis for interpretation cannot be different. As the Supreme Court remarked in Kennedy v. Westinghouse Electric Corp., 16 N.J. 280, 287 (1954):
"* * * It may be that the well known reluctance of negotiators of labor agreements to avail themselves of a lawyer's services in their drafting will often create more need for interpretation and aggravate its difficulties but the standards of construction will not differ for that reason."
So often when the technique of amendment is utilized, the need to integrate the changes or additions with the remainder of the agreement is not given attention. And thus conflicts of interpretation are gestated.
Turning to the specific contentions of the parties, we consider first the claim advanced by the union on the oral argument, namely, that the provisions of subsection 2 of the Job Classification Schedule, which sets out the requirements for entering the classification of Senior Technician, must be read in conjunction with subsection 2(b) of the Promotions Clause, which says that for promotion within the Technician Group longest total credited service shall be determining, and as a result it is fairly arguable that the company is bound to promote Technician I men according to seniority.
This suggestion may be dismissed as without substance. Even if it be assumed that the sections should be read together, the argument overlooks entirely that the Promotions Clause generally stipulates that promotions shall be made on the basis of ability to do the particular work as determined by management and that in the determination of ability "consideration shall be given by the Company to experience as reflected by total credited service on the following basis: * * *." (Emphasis added.) Then follows the specification of means of appraising seniority. One of these subsections is 2(b) on which the plaintiffs rely. Under the circumstances, even if the general reference to the "Technician Group" could be said to include Senior Technicians, the only reasonable interpretation of that section is that in reaching a *117 decision as to ability seniority must be considered in the order established thereby.
This brings us to a consideration of the company's claim that paragraphs 1 and 2 of the new subsection D of the Job Classification Schedule stand alone and give it sole discretion to appoint the Senior Technicians so long as it is done in accordance with the conditions prescribed by paragraph 2.
The company also denies the additional theory appearing in plaintiffs' brief that subsection 2(b) of the Promotions Clause is in pari materia with paragraphs 1 and 2 of the Job Classification Schedule relating to Senior Technicians and therefore imposes a mandate to give consideration to seniority in passing upon ability for promotion purposes.
A cardinal principle of construction is that if there is a conflict between a general provision covering a particular subject matter and a special or specific one relating to a part of the subject matter, the special or specific one will be deemed controlling. The Court of Errors and Appeals in Bullowa v. Thermoid Co., 114 N.J.L. 205, 210 (1935), in speaking of this rule, said:
"* * * Where there is a repugnancy between the general clauses and specific ones, the latter will govern; and, even if there is no actual repugnancy, taking the words of the contract literally, and from the whole instrument it appears that the purpose of the parties was solely directed to the particular matter to which the special clause or words relate, the general words will be restrained."
See also 3 Corbin, Contracts § 547, at 96 (1951); Restatement, Contracts, § 236(c) (1932).
It is patent from the circumstances surrounding the 1954 amendment of the contract that Senior Technician was to be a special classification. It was agreed that the wage range was to be on a merit basis and to be left to the discretion of the employer, apparently impliedly subject to the understanding that it would be higher than that of the Technician I class. And, quite obviously, a forceful argument is justifiably based on the language of paragraph 2 of the Senior *118 Technician provision of the Job Classification Schedule to the effect that the specific requirements set forth there were to be the sole criterion for ascension from Technician I to Senior Technician.
Under that paragraph the appointment "is reserved for outstanding Technician I personnel who have received for at least one year the top salary of the classification." It is to be made "strictly on the basis of merit and at the discretion of the Company." It is "available only to those who have demonstrated conclusively by their performance over a period of years on a variety of equipment their possession of special skills and abilities as well as the mental flexibility and versatility necessary to carry out the top grade of experimental work required by the Company of men in their field." [Emphasis added throughout this paragraph] Considered in isolation the emphasized portions would appear to have the clear effect of localizing the qualifications for the appointment in question within the paragraph and of reserving admission to the class as a management prerogative subject only to the limitations stated therein.
On the other hand, it cannot be overlooked that all three divisions of the Technician classification were created at one time. The employees included therein were to do various kinds of related work in the field of research and experiment. The lowest grade was to be Technician II; next Technician I, and highest, Senior Technician. Progression from one grade to another manifestly is properly considered as a promotion. And it must be noted that promotion, not from Technician II to Technician I, but from one classification within the three-level "Technician Group" into a higher classification, was provided for as already indicated, by amendment of the general Promotions Clause. Section 1A of this clause stipulates that in the determination of ability for such promotion, consideration shall be given to experience as reflected by total credited service. And section 2(b) thereof is clearly and reasonably susceptible of the argument that the intention of the parties was, and the proper interpretation of the language thereof is, that in *119 promotions from Technician I to Senior Technician, those having the longest credited service are entitled to first consideration in the overall evaluation of ability as regulated by paragraph 2 of amended subsection 2 of the Job Classification Schedule which sets forth the requirements for appointment to Senior Technician. If the intention were otherwise (it may be argued) it would have been a rather simple matter to add at the end of paragraph 2 of the requirement for appointment to Senior Technician: "Subsection 2(b) of the Promotions Clause shall not apply to these promotions."
Under the circumstances, it seems to us fairly arguable that the amended Promotions Clause and the amended Job Classification Schedule with respect to advancement to Senior Technician should be considered in association and therefore as requiring the employer to consider (not to be bound exclusively by) longest credited service. Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 386, 173 A.L.R. 1185 (E. & A. 1947).
It is no part of our function to decide the merits of the controversy. We are limited to a determination of whether or not the interpretation of the contractual language contended for by the party seeking arbitration is reasonably debatable in the minds of ordinary laymen. If it is frivolous in the legal sense, that is, opposed to the manifest meaning of the compact, then arbitration must be denied. But if it is fairly arguable, we are bound by the consent of the parties to employ another forum for the adjudication of their dispute and we must grant an order to proceed to arbitration. Machine Printers Beneficial Ass'n of United States v. Merrill Textile, Inc., supra, 12 N.J. Super., at page 32.
Under the circumstances we hold: (1) that there is no arbitrable question as to whether the employer is bound to promote from Technician I to Senior Technician on the basis of seniority alone; (2) that there is a reasonable dispute for arbitration as to whether the employer has the sole discretion to promote from Technician I to Senior Technician subject only to the requirements specifically set down therefor and without regard to seniority, or whether *120 by virtue of the amended Promotions and Job Classification Clauses the employer is under a contractually assumed obligation to consider the overall problem of ability of candidates for such promotion in order of their seniority.
Accordingly, for the reasons outlined, the order of the trial court is affirmed.