CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. PATERSON POLICE P. B. A. LOCAL # 1, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 20, 1982—Decided May 11, 1982.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*Ralph L. DeLuccia, Jr.* argued the cause for the appellant (*Henry Ramer* attorney; *James A. Farber* on the brief).

*Mark C. Rushfield* argued the cause for the respondent.

The opinion of the court was delivered by

PRESSLER, J. A. D.

Plaintiff City of Paterson appeals from a judgment of the trial court confirming the award of an arbitrator in respect of a grievance filed by defendant Paterson Police P.B.A. Local # 1 (P.B.A.).

Essentially, the subject of the grievance was the entitlement of a group of police officers to the benefits accorded by *N.J.S.A.* 40A:9–5. That statute provided in pertinent part that in certain circumstances the period of a municipal employee's prior employment by a county or other municipality shall be added to his current period of employment for "any purpose whatsoever" in respect of which total length of service is relevant. The gravamen of the dispute between the parties in its present posture is predicated on the holding of this court on January 21, 1980, that *N.J.S.A.* 40A:9–5 is unconstitutional as special legislation because of the limitation of its benefits to employees in counties of the first and second class. *Kenney v. East Brunswick Tp.*, 172 *N.J.Super.* 45 (App.Div.1980).

Although the grievance here was filed prior to January 21, 1980, the arbitration hearing was not held until several months after the *Kenney* decision. It is consequently the position of the city that the arbitration award, which afforded rights to the grievants pursuant to *N.J.S.A.* 40A:9–5, was procured by undue means requiring its vacation. See *N.J.S.A.* 2A:24–1 *et seq.*, 2A:24–8(a). The contention of the P.B.A., with which both the arbitrator and the trial judge agreed, is that the arbitrator was purporting to construe not statutory entitlements but rather contractual ones. Thus, it argues that since the contract was construable as having incorporated the benefits of *N.J.S.A.* 40A:9–5 prior to the unconstitutionality holding, those benefits remained contractually available despite the intervening demise of the statute.

The collective negotiation agreement here in question covered the period of August 1, 1978 to July 31, 1980. There had apparently been some dispute between the parties during the contract term respecting the application of *N.J.S.A.* 40A:9–5. Consequently, the Director of the Department of Public Safety issued a directive to the city's police chief and fire chief, effective September 12, 1979, purporting to clarify the city's policy in this regard. The directive provided that subject to the exceptions therein stated, every appointee to the police or fire

department would be required to execute a written waiver of all rights under that statute as a condition of appointment. Those police appointees excepted were those "immediately transferring" from employment by another paid police department, a county police department, a county park police department or a housing police department, provided such appointees had satisfactorily completed police officer training as prescribed by the New Jersey Training Commission. Such excepted appointees were also required to execute written waivers of seniority rights under the statute as they pertained to promotions, vacation days and vacation "picks," but were to be accorded seniority credit for the purpose of determining pay grade. The grievants, all of whom were denied the full scope of statutory rights, included both officers who had executed the required waivers and those who were appointed despite the fact that they had not.

The grievance was formally filed by the P.B.A. with the chief of police on October 31, 1979 and denied by the Director of Public Safety on November 5, 1979. The arbitration thereafter ensued, resulting in an award dated August 4, 1980, sustaining the grievance and directing the city to grant the grievants "credit for prior service as required under *N.J.S.A.* 40A:9–5, including time prior to a break in service."

■ Before addressing the merits of the controversy, the arbitrator considered the city's argument that the right to grieve had been waived by the P.B.A. because of the untimeliness of the filing of the grievance. Although the collective negotiation agreement does require the filing of a grievance within 15 days following the event complained of and the event here occurred no later than the September 12, 1979 directive, the arbitrator nevertheless rejected the city's timeliness claim on the ground that there had been ongoing discussions between the parties regarding the application of the statute for some months prior to the filing of the grievance. It was the conclusion of the arbitrator that these discussions should not procedurally prejudice either party. He thus permitted the city to raise the

timeliness argument at the arbitration over the P.B.A.'s objection but determined the question adversely to the city both as a matter of equity and fundamental fairness and as a matter of contract interpretation. We note the foregoing because the city continues to raise the timeliness objection. We regard the action of the arbitrator in this regard as unimpugnable since it was clearly within his jurisdiction to construe the contract in respect of the application of grievance time periods.

With respect to the merits of the controversy, it was first the view of the arbitrator that neither the waiver requirement nor the actual execution of waivers by some of the grievants precluded the sustaining of the grievance. It was his conclusion in this respect that the city's waiver requirements conflicted with various provisions of the collective negotiation agreement. These provisions included the stipulation that all statutory rights not specifically referred to in the contract were to be deemed not to have been waived by the P.B.A. and an undertaking by the city not to interfere with any employee rights conferred by law. *And see Kloss v. Parsippany-Troy Hills Tp.*, 170 *N.J.Super.* 153 (App.Div.1979). The arbitrator further noted that since the collective negotiation agreement was between the city and the P.B.A., no individual P.B.A. member was at liberty to enter into an individual agreement or understanding with the city in violation thereof.

As to the substance of the grievance, namely, the availability to P.B.A. members of the benefits of *N.J.S.A.* 40A:9–5, the arbitrator was well aware of the intervening holding of this court in *Kenney.* He noted, however, that the grievance had been filed prior to that holding and that the filing had, moreover, been delayed because of the continuing and ongoing discussions between the P.B.A. and the city in an attempt to settle the matter without resort to the grievance process. Thus, he reasoned, had the arbitration preceded *Kenney,* as well it might have, the grievants' right to the statutory benefits would have been, in his view, beyond reasonable debate and dictated by the contractual provisions heretofore referred to.

The legal question then, in the arbitrator's judgment, was whether *Kenney* precluded that result. His determination that it did not rested upon our express stipulation in *Kenney* that its application was to be prospective only. Thus, he concluded that

> . . . had the City granted the Grievants the rights contained in 40A:9–5 prior to January 21, 1980, the Grievants would have retained said rights even after the Court decision. The rights contained in 40A:9–5 were rights which the Grievants were entitled to 'by law' prior to January 21, 1980, and prior to said date the rights contained in 40A:9–5 were applicable. Said rights should have been granted the Grievants prior to the Court decision, as required under 40A:9–5; the Grievants were entitled to credit for prior service as contained in 40A:9–5, and the fact that the City did not grant same *does not diminish the Grievants rights to same.*

It was consequently the ultimate opinion of the arbitrator that by sustaining the grievants' right to the statutory benefits he was in effect awarding them not a retrospectively applied statutory right but rather that he was according them the contractual benefit of their negotiated preservation of all statutory rights existent at the time the contract took effect.

In its substantive challenge to the award, the city concedes that *N.J.S.A.* 2A:24–1 *et seq.* is applicable and therefore that the award may only be vacated upon demonstration of one or more of the grounds set forth by *N.J.S.A.* 2A:24–8. It relies on *N.J.S.A.* 2A:24–8(a), which requires the vacation of an award "procured by corruption, fraud or undue means." The argument is that "undue means" encompasses an error of law, where it was the intention of the arbitrator to follow the law in making the award. See, *e.g., Carpenter v. Bloomer,* 54 *N.J.Super.* 157, 168 (App.Div.1959). Thus, the city contends that the arbitrator intended to follow our decision in *Kenney* and erred with respect to the import of the prospective application limitation since the intent thereof was simply to permit retention of statutory benefits by those to whom they had already been granted as of the date of the decision and to withhold them from all claimants to whom such grant had not yet been made.

In our view the city concedes too much in its suggestion that *N.J.S.A.* 2A:24–8 applies to the public sector with the same preclusionary force as it applies to the private sector. The

Supreme Court in *Kearny PBA Local # 21 v. Kearny*, 81 *N.J.* 208 (1979), drew a clear distinction between the public and private sectors *vis-à-vis* the vulnerability of an arbitrator's award. Thus, Justice Schreiber explained that:

> In the context of public employment an arbitrator's determinations in binding arbitration are subject to pertinent statutory criteria as well as the public interest and welfare. In the private sector, the parties may authorize the arbitrator to determine legal issues as he deems fit irrespective of whether those determinations are in accordance with the law.[1] The source of the arbitrator's authority is the agreement and his 'function is to comply with the authority the parties have given him in the agreement.' *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* [144] at 155. When the parties intend that their contract be interpreted in accordance with the law, his authority is circumscribed by being limited to carrying out that intent. *In re Arbitration Between Grover and Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 230–231 (1979). However, in the public sector the parties do not have this choice, for public policy demands that inherent in the arbitrator's guidelines are the public interest, welfare and other pertinent statutory criteria. [*Id* at 217; footnote 1 omitted]

It was his further explication that

> An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action. However, as we have previously pointed out, an arbitrator's award in the public sector should be consonant with the criteria peculiarly applicable in this area. No showing was made here that the arbitrator acted contrary to the inherent guidelines applicable to public sector arbitration. In that event (the underlying facts being virtually undisputed) the scope of judicial review is limited to determining whether or not the interpretation of the contractual language is reasonably debatable. See *Standard Oil Development Co. Employees Union v. Esso Research & Engineering Co.,* 38 *N.J.Super.* 106, 119 (App.Div.), sustained on rehearing 38 *N.J.Super.* 293 (App.Div.1955). If so, then we should adhere to the parties' voluntary agreement to engage an arbitrator to resolve their dispute. [*Id.* at 221]

As we understand the import of the *Kearny* holding, the question as to whether the arbitrator intended to follow the law or intended to construe the contract irrespective of the law is not dispositive of the "undue means—legal error" ground. The teaching of *Kearny* is rather that the award is not confirmable if it conflicts either with the letter or the policy of relevant statutory criteria governing public employment.

Thus, as we view it, the confirmability of the award does not rest upon whether the arbitrator correctly or incorrectly applied

*Kenney.* Nor does it rest upon whether the rights which had been afforded by *N.J.S.A.* 40A:9–5 had been incorporated into the contract at the time of its execution. The arbitrator's conclusion that they had been is in our view clearly unassailable. The question rather is whether or not such incorporation, as a matter of law and within the intendment of *Kearny,* was vitiated by the subsequent unconstitutionality holding. The answer to this question must in turn depend on whether, absent any legislation on the subject, the rights afforded by *N.J.S.A.* 40A:9–5 would have been nevertheless negotiable. Clearly, if the employee benefits provided by *N.J.S.A.* 40A:9–5 were negotiable in the absence of legislation and had in fact been negotiated, whether by express provision or statutory incorporation, then the ensuing contract right of the employees would have survived the holding of unconstitutionality, particularly since that holding was predicated on an essentially technical rather than substantive ground. And if this was the case, then clearly the arbitrator's award cannot be deemed to conflict with controlling statutory criteria. On the other hand, if negotiability of *N.J. S.A.* 40A:9–5 rights depends on the viability of the statute, the subsequent vitiation of the statute would render the prior negotiation thereof void as well.

The question of the negotiability, in the absence of a statute, of the panoply of rights purportedly afforded by *N.J.S.A.* 40A:9–5 must be ambivalently answered. Thus, the constitutionality of *N.J.S.A.* 40A:9–5 notwithstanding, this court has heretofore held that that statute was not in any event construable as applying to promotional rights in contravention of Civil Service law and regulation in those municipalities, of which Paterson is one, which are subject to Civil Service. *See Makowitz v. Civil Service Dep't.,* 177 *N.J.Super.* 61 (App.Div.1980), certif. den. 87 *N.J.* 326 (1981); *Parelli v. Civil Service Dep't,* 138 *N.J.Super.* 364 (App.Div.1976), aff'd o.b. 72 *N.J.* 480 (1977). Nor is *N.J.S.A.* 40A:9–5, the question of its constitutionality notwithstanding, construable in any way which would conflict with the Public Employee Pension Law. *Grieco v. Newark Employees'*

*Retirem. System*, 173 *N.J.Super.* 474 (App.Div.1980), certif. den. 85 *N.J.* 468 Thus, as we said in *Parelli v. Civil Service Dep't, supra,* at 365–366, the viability of *N.J.S.A.* 40A:9–5, apart from the question of its unconstitutionality, is limited to those "areas remaining subject to the exclusive jurisdiction and control of counties and municipalities adopting Civil Service, such as salaries and wages." The P.B.A. concedes that *N.J.S.A.* 40A:9–5 does not extend to promotional matters but claims that it does extend to all terms and conditions of employment dependent upon length of service, as to which there is no countervailing statutory or rule provision, including salary scale, longevity pay, vacation rights and the like.

It is our view that in general terms the P.B.A.'s position is correct. We are troubled, however, by the scope of the arbitrator's award which, as we have heretofore noted, simply grants the grievants credit for prior service "as required" by *N.J.S.A.* 40A:9–5. Thus, we are satisfied that *N.J.S.A.* 40A:9–5 benefits, to the full extent they are negotiable in the absence of statute, were intended to be encompassed by the arbitration award and that that result is fully confirmable. Nevertheless, for the reasons heretofore stated, we are also satisfied that there are substantial questions involved in defining the scope of the benefits purportedly afforded by *N.J.S.A.* 40A:9–5 which continue to be negotiable in view both of the unconstitutionality holding and the prior constructional limitations placed on the statute. We conclude, however, that these questions, if in fact they should arise between the parties in the implementation of the award, do not affect the viability of the award but rather its interpretation, and that such interpretive questions are, moreover, within the primary jurisdiction of the Public Employment Relations Commission in determining scope of negotiation. In the interests of economy and since there presently appears to be no precise definition of the scope of dispute between the parties as to these matters, we opt to affirm the confirmance of the award and leave the parties to their PERC recourse should interpretive questions arise.

Finally, the city claims that the arbitrator made a gross legal error in determining that the benefits of *N.J.S.A.* 40A:9–5 were to be afforded irrespective of a "break in service" between employment with the city and the prior employment of the officer in another position or by another governmental entity. The city points out, however, in its appellate brief that the question may be moot in view of the fact that none of the grievants here had in fact had such a break in service. We agree that since the award is limited to the grievants named, the reference therein to a "break in service" may be regarded as surplusage.

The judgment confirming the confirmation of the arbitration award is confirmed without prejudice to the parties' right to submit interpretive disputes to the Public Employment Relations Commission.