GOERKE KIRCH COMPANY, a body corporate, complainant-respondent and cross-appellant,

*v.*

GOERKE KIRCH HOLDING COMPANY, likewise a body corporate, defendant-appellant and cross-respondent.

[Argued October 26th, 1934.   Decided February 4th, 1935.]

*Mr. Abe J. David,* for the defendant-appellant.

*Mr. Lionel P. Kristeller* (*Mr. Jacob L. Newman* and *Mr. Stanley Folz,* the latter of the Pennsylvania bar, on the brief), for the complainant-respondent.

The opinion of the court was delivered by

HEHER, J.

By an indenture dated July 10th, 1929, defendant, Goerke Kirch Holding Company, leased to complainant, Goerke Kirch Company, a retail general merchandising concern, certain lands in the city of Elizabeth, for a term of twenty-two years and ten months, to begin on June 1st, 1929. The annual rent stipulated was the money equivalent of four per centum of the total amount of the gross sales of goods, wares and merchandise by the tenant upon the premises, with the proviso that the "minimum annual rental" should be $80,000. Financial adversity overtook the tenant, and, in an effort to effect rehabilitation, the parties agreed, on February 1st, 1932,

to execute a new lease, modifying the terms of the old, "as soon as the figure for the minimum net annual rental, to be inserted in paragraph 1 thereof, shall have been determined." It was further provided that the "fair market annual rental of the premises" should be determined by arbitration, the arbiters to be three members of the Elizabeth real estate board, chosen by the president of that body; and that the "amount so determined shall be the minimum net annual rental for the period beginning February 1st, 1932, and ending January 31st, 1937, to be inserted in paragraph 1" of the attached draft of lease. An underlying agreement provided that this determination should be made "not later than March 1st, 1932." Arbitrators were appointed pursuant to the contract. They made their determination on May 25th, 1932; but it was set aside, in the Union circuit court, upon the ground of their misbehavior. A companion order, directing the parties to proceed to arbitration anew under the Arbitration act of 1923 (*P. L. 1923 p. 291*) was set aside, on *certiorari*, by Mr. Justice Case as an excess of power.

The bill alleged the expiration, "without the fault or neglect of the complainant," of "the time within which the arbitrators * * * could make their award as to the fair market annual rental of the premises," and prayed equitable interposition to "determine * * * the fair net annual rental which the complainant must pay for the use and occupancy of the premises," during the mentioned period. The decree fixed the "fair net annual rental" for the term commencing February 1st, 1932, and ending January 31st, 1937, at $70,000, and directed the parties, within a specified time, to execute the modification agreement in the form agreed to, with the additional stipulation that the "minimum annual rental" shall be in the sum last mentioned. There are cross-appeals. The complainant insists that an erroneous method was employed in determining the rental value; defendant denies jurisdiction, and urges, in addition, that the evidence does not support the finding so made.

The asserted cause of action is *coram non judice*. The proceeding contemplated by the parties for the determination of

the minimum rental is arbitral in character. The agreement expressly provides for the selection of "arbitrators" to determine the question. A submission to arbitration is essentially a contract. At common law the authority of an arbitrator was in its essence revocable, and, generally speaking, the submission could be revoked at any time previous to an award. The remedy of the party aggrieved was an action in damages for breach of the contract. *Knaus* v. *Jenkins, 40 N. J. Law 288; Crum* v. *Moore's Adm'r, 14 N. J. Eq. 436; Paulison* v. *Halsey, 38 N. J. Law 488; Freeborn* v. *Denman, 8 N. J. Law 116; March* v. *Eastern Railroad Co., 40 N. H. 548; Mills* v. *Bayley, 2 H. & C. 36; Vynior's Case, 8 Coke 81b; 77 Reprint 597; 3 Eng. Rul. Cas. 357; 2 R. C. L. 366, 370; 5 C. J. 53, 61.* The authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, supplemented by the pertinent provisions of the Arbitration act, and no further. They have a right to stand upon the precise terms of their contract. *Westville Land Co.* v. *Handle, 112 N. J. Law 447.*

Section 1 of the statute relating to arbitration (*P. L. 1923 p. 291*) ordains that a written contractual stipulation for the settlement of a controversy by this process "shall be valid, enforceable and irrevocable, save upon such grounds as exists (*sic*) at law or in equity for the revocation of any contract." But, in virtue of the express terms of the contract at issue, its efficacy terminated at the expiration of the prescribed period. There was, in effect, a revocation of the submission —a termination of the authority vested in the arbitrators—by the lapse of the stipulated time. The contract had no vitality thereafter. The parties made no provision for this contingency, *i. e.*, a resubmission after the stipulated time, when the attempted exercise of the authority conferred upon the arbitrators proved abortive. There was a further provision that "if for any reason said committee [of arbitration] is not appointed, or, if appointed, fails to qualify or to act, or fails to render its findings as and within the time afore-

said, then either the lessor or lessee may apply to any court in New Jersey having competent jurisdiction, for the appointment of a committee of arbitrators, to be composed of three reputable men engaged in the real estate business in Elizabeth, New Jersey, for the purposes aforesaid, and the findings of said committee, when approved by said court, shall be conclusive and binding upon the parties hereto." But this manifestly does not embrace the situation here presented. There is exhibited a *casus omissus* in the contract, which, for obvious reasons, the court cannot supply. It was the rule at common law that the authority of arbitrators to function as such terminated with the making of the award, notwithstanding its invalidity. In such event, they became *functus officio*. *Flannery* v. *Sahagian, 134 N. Y. 85; 31 N. E. Rep. 319; Porter* v. *Scott, 7 Cal. 312; In re Stringer (1901), 1 K. B. 105; Mordue* v. *Palmer, L. R. 6 Ch. 22; 5 C. J. 75.* And it is elementary that where, as here, the parties, by the terms of the submission, have provided for the making of an award within a specified time, the authority of the arbitrators, in the absence of provision to the contrary, terminates upon the expiration of the period so limited. *White* v. *Kemble, 3 N. J. Law 53; Bent* v. *Erie Telegraph and Telephone Co., 144 Mass. 165; 10 N. E. Rep. 778; Johnson* v. *Crawford, 212 Pa. 502; 61 Atl. Rep. 1103; Marshall* v. *Powell, 9 Q. B. 779; 58 E. C. L. 779; 115 Reprint 1475.* The Arbitration act referred to declares this fundamental principle. It provides (section 9) that "where an award is vacated and the time, within which the agreement required the award to be made, *has not expired,* the court may, in its discretion, direct a rehearing by the arbitrators." *P. L. 1923 p. 293.*

It is a corollary of the foregoing that, on a failure of arbitration, the *status quo ante* is restored. The rights and remedies of the parties are as they subsisted before the making of the submission agreement. Here the abortive termination of the arbitral proceeding operated to revive the rights and remedies, obligations and burdens created or imposed by the original contract, as they existed when the arbitration agreement was made.

Under these circumstances, equitable interposition was unwarranted. There is no principle of equity jurisprudence to sustain it. It is elementary that the law is powerless to supply, or add to, a contract, unless the parties have invited such assistance or addition by *omission expressly* to define their obligations. *Westville Land Co.* v. *Handle, supra; Assets Realization Co.* v. *Howard, 211 N. Y. 430; 105 N. E. Rep. 680.* And this restraint is likewise imposed upon courts of equitable jurisdiction. The field of equity jurisprudence is not like unto an uncharted sea, with no compass to guide save the conscience of the chancellor, unrestrained by principle, precept or rule. Its jurisdiction rests upon and is limited by well established principles; otherwise, there could be no certainty or fixity of right and remedy—its functioning would be attended with uncertainty and consequent confusion. A court of equity is not vested with arbitrary power; it does not rise above all law; nor can it substitute terms for those made by the parties to a contract. The rules of property, rules of evidence, and rules of interpretation in both courts of equity and law are, or should be, exactly the same; both ought to adopt the best, or must cease to be courts of justice. Neither a court of equity nor of law can vary men's wills or agreements, or (in other words) make wills or agreements for them. Both are to understand them truly and therefore uniformly. One court ought not to extend, nor the other abridge, a lawful provision deliberately settled by the parties, contrary to its just intent. Both courts will ·equitably construe, but neither pretends to control or change, a lawful stipulation or engagement. *3 Bl. Com. 433, 434, 436; Pom. Eq. Jur.* §§ *1293, 1297; 21 C. J. 22.* "It is entirely beyond the power of any judicial tribunal to make a contract for litigants, or compel them to make a contract with each other * * *. No court has power to make a contract for persons *sui juris.*" *Domestic Telegraph Co.* v. *Metropolitan Telephone Co., 39 N. J. Eq. 160; affirmed, 40 N. J. Eq. 287.* "A court of equity will not undertake to make a contract for the parties, or to dictate terms into it that have never been agreed upon." *Story Eq. Jur. (14th ed.) 1019.*

Equity distinguishes between the stipulations which are of the essence of a contract, and those which are not; but here, for the reasons to be stated, the provision for the determination of the question at issue by arbitration is in the former category.

It is well settled that equity will not decree specific performance of an agreement to submit a matter to arbitration. *Gunton* v. *Carroll, 101 U. S. 426; 25 L. Ed. 985; Noyes* v. *Marsh, 123 Mass. 286; South Wales Railway Co.* v. *Wythes, 5 De G. M. & G. 880; 54 Eng. Ch. 690; 43 Reprint 1112; Story Eq. Jur. (14th ed.)* § *1900.* And a contract that is incomplete, uncertain, or indefinite in its material terms will not be specifically enforced in equity. "If the matter still rests in treaty, or if the agreement, in any material particular be uncertain or undefined, equity will not interfere." *Neptune Fisheries Co.* v. *Cape May Real Estate Co., 89 N. J. Eq. 552; Myers* v. *Metzger, 63 N. J. Eq. 779; Potter* v. *Hollister, 45 N. J. Eq. 508; affirmed, 46 N. J. Eq. 609; Brown* v. *Brown, 33 N. J. Eq. 650; McKibbin* v. *Brown, 14 N. J. Eq. 13; affirmed, 15 N. J. Eq. 498.* The price is an essential term, and where the contract specifies a mode of ascertaining it, the undertaking is conditional until the price is so ascertained, and is absolute only when it has been determined. "If there be default in this respect the contract remains imperfect, and incapable of being enforced." *Woodruff* v. *Woodruff, 44 N. J. Eq. 349, 356.* The apposite rule has been stated thus: "It is undoubtedly true that a court of equity will not enforce a contract of sale where the price is to be fixed by the parties, or by arbitrators to be chosen by the parties, and for the plain reason, that the contract sought to be enforced is incomplete in an essential particular, and the court have no power to substitute themselves or a master to fix the price in the place of the parties or of arbitrators to be chosen by the parties. This would be not to enforce an existing contract of the parties, but to make one for them. * * * Appraisement is fixing the value, and when the agreement is to pay the value as appraised, and *no mode of choosing appraisers is agreed upon* and there is nothing in the contract to show that the

choice of appraisers was to be made by the parties, we think it is the duty of the court to ascertain the value by appointing appraisers." *City of Providence* v. *St. John's Lodge, 2 R. I. 46.* This statement of the rule has been approved by this court. *Davila* v. *United Fruit Co., 88 N. J. Eq. 602; Lehigh Valley Railroad Co.* v. *Andrus, 91 N. J. Eq. 225; affirmed, 92 N. J. Eq. 238.* The ruling principle was applied by Lord ·Cranworth, in *Morgan* v. *Milman, 17 Jur. 193.* "If there is an agreement that the price shall be that which is to be ascertained upon a fair valuation, then the court may interfere. All the authorities—the cases of *Milnes* v. *Grey (14 Ves. 400)*; *Blundell* v. *Brettargh (17 Ves. 232)*, and *Courlay* v. *The Duke of Somerset (1 V. & B. 68)*—enunciate the proposition in the strongest language, and where the parties have stipulated that the price shall be ascertained by arbitration—in *Blundell* v. *Brettargh,* it was by particular arbitrators; in *Milnes* v. *Grey,* it was not by a particular arbitrator, but by arbitration generally—if the arbitration does not proceed, and the price be so ascertained according to the mode in which the parties have stipulated, this court has no right to make a different contract than the parties have entered into, and ascertain the price for them in some different mode."

The court, in such circumstances, undertakes to effectuate the intention of the parties. Equitable interposition to decree specific performance is, therefore, justifiable where the contract merely provides for a *fair price,* without specifying the mode of determining it, or where, under the circumstances, the manner or method provided for determining the price or valuation cannot be followed, and this stipulation is not of the very essence and substance of the contract. In such cases, the court will substitute itself for the arbitrators. *VanDoren* v. *Robinson, 16 N. J. Eq. 256; Woodruff* v. *Woodruff, supra; Domestic Telegraph Co.* v. *Metropolitan Telephone Co., supra; Copper* v. *Wells, 1 N. J. Eq. 10; McKibbin* v. *Brown, supra; Davila* v. *United Fruit Co., supra; Potts* v. *Whitehead, 20 N. J. Eq. 55; Lister Agricultural Chemical Works* v. *Selby, 68 N. J. Eq. 271; Lehigh Valley Railroad Co.* v. *Andrus, supra.*

It is the general rule that the contract is uncertain or lacking in a material term, unless there is a price stated, or some means of ascertaining it within the power of equity to enforce. *Pom. Eq. Jur.* § *2189.* Where the parties have merely agreed upon a "fair price" or "fair valuation," they have fixed a standard or measure of value without specifying any particular method for its ascertainment, and the court may, without making a contract, ascertain the price according to the standard thus fixed, and enforce the contract. *Domestic Telegraph Co.* v. *Metropolitan Telephone Co., supra; Lister Agricultural Chemical Works* v. *Selby, supra; Van Doren* v. *Robinson, supra.*

Respondent invokes the doctrine laid down in *Lehigh Valley Railroad Co.* v. *Andrus, supra,* and approved by this court, but it furnishes no ground for equitable intervention here. It does not reach beyond the principle herein stated. There Vice-Chancellor Backes held that a contract for the sale of land at a price to be fixed by arbitrators will not be specifically enforced until the price is so determined. He said: "There the contract is executory. The award is of the essence of the contract, and equity will not appoint arbitrators to complete the contract for the purpose of enforcement." The lease under consideration was for a term of sixty years at a fixed rental for the first twenty years, and for each ten-year period thereafter at a rental to be fixed by arbitrators to be chosen by the parties. The arbitrators could not agree upon the rental for the second ten-year period, nor upon an umpire, and there was no determination. It was pointed out that the tenant was in possession, and that, under the circumstances, "the method set up for ascertaining the rental is subsidiary and incidental, of form and not of substance; and having proved abortive the court will substitute itself for the arbitrators." The principle laid down in *Dinham* v. *Bradford (1869), 5 L. R. Ch. App. 519,* was applied. The subject-matter of that litigation was the determination of the value of the share of a retiring partner. Lord Hatherley pointed out that the purchaser was in possession, and that "if the valuation cannot be made *modo et forma,* the court

will substitute itself for the arbitrators. It is not the very essence and substance of the contract, so that no contract can be made out except through the medium of arbitrators." He pointed out the obvious distinction between this and the case of a sale where "the estate remains where it was and the money where it was," and no "rights are changed by the circumstances of that method of selling the estate having failed."

The primary inquiry is whether the method of selection is an "auxiliary incident" or "one so wrought into the substance, so much a part of an organic whole, as to be accounted of the essence." *Marchant* v. *Mead-Morrison Manufacturing Co., 252 N. Y. 284; 169 N. E. Rep. 386.* The instant case falls into the latter classification. The arbitration provision was clearly of the essence and substance of the contract. The tenant was not in possession under the proposed new lease, which, by express stipulation, could not come into being until the rent was fixed in the manner provided, but under the old lease, which, as pointed out, continued in existence to govern the parties in the event of the failure of arbitration. The tenant was apparently a victim of the current trade depression, and the agreement in question was devised to effect a financial rehabilitation, and to enable it to continue business. In the existing abnormal circumstances, it was deemed the part of prudence to have the rental determined by real estate experts of the vicinage, chosen not by the parties, but by the chief executive officer of the local real estate board. That this was intended by the parties to be of the essence is evidenced by the subsequent provision, referred to above, that in certain enumerated contingencies, either of the parties was at liberty to apply "to any court in New Jersey having competent jurisdiction, for the appointment of a committee of arbitrators, to be composed of three reputable men engaged in the real estate business" in the municipality in which the lands are located. The contract at issue is wholly executory. Neither party surrendered any right, nor changed its position, on the strength of it; there was no such intention.

Decree reversed, and cause remanded with direction to dismiss the bill.

No. 115—

*For affirmance*—LLOYD, DONGES, VAN BUSKIRK, JJ.   3.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, JJ.   8.

No. 126—

*For dismissal of complainant's cross-appeal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ.   10.