64 N.J. Super. 301 (1960)
165 A.2d 844
THE WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, INC., ETC., PLAINTIFF-RESPONDENT,
v.
NEW JERSEY GUARDS UNION, INC., ETC., AND WILLIAM ZWALD, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1960.
Decided December 1, 1960.
*303 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Martin J. Loftus argued the cause for defendants-appellants.
Mr. Americus S. Muti argued the cause for plaintiff-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the individual defendant and his collective bargaining representative from *304 a Law Division judgment setting aside that portion of an arbitrator's adjudication which awarded back wages to the employee.
The employee, William Zwald, first entered the service of plaintiff in 1951, assuming the duties of guard. He worked a regular 48-hour week and, except for one minor infraction in 1953, his record was spotless and his performance satisfactory. In due course he was promoted to the position of sergeant.
On March 24, 1958 Zwald was assigned by plaintiff to guard a valuable shipment at the Baltimore Transfer Co., in Jersey City, on the midnight to 8 A.M. shift. Zwald's testimony before the arbitrator was to the effect that he had a severe cold that day, and before reporting for duty he attempted to provide home medication for his condition in the form of a number of drinks of whiskey. He had intended to phone in ill, but because the electric and telephone wires were down, as the result of a crippling storm in the area, he could not inform the company of his illness and therefore reported for work.
At 12:45 A.M., 45 minutes after Zwald's tour of duty had commenced, two F.B.I. agents entered the Jersey City plant. They found Zwald asleep, his feet propped up on a desk. The representatives of the Baltimore Company and a supervisor of the Burns Agency were summoned to the scene. In their presence, Zwald was awakened and was found to be in a state of intoxication.
Zwald was forthwith discharged from plaintiff's employ pursuant to section 5 of the existing collective bargaining agreement between the plaintiff and the defendant union, which provides as follows:
"5. The management of the work, the direction of the working force and the right to discharge an employee for just cause are vested exclusively in the Employer. It is not the intention to hereby encourage the discharge of employees. However, if an employee considers himself unjustly discharged by the Employer, he shall have the right, upon submitting his case in writing to the *305 Union, to have the matter taken up with the Employer for review and final decision by arbitration, provided the Union shall have notified the Employer of its intention to so proceed in writing within one (1) week following the discharge."
The union, after several weeks of fruitless negotiation, notified the employer of its intention to seek review and final decision by arbitration as to the reasonableness of the discharge. No objection to the tardiness of the union's notification was ever raised by the plaintiff.
The matter came on for arbitration on October 3, 1958, on the sole submitted issue of "* * * whether the Company, Burns International Detective Agency, is justified in discharging William Zwald under the provisions of the Union Contract for the offenses hereinafter enumerated, and if not, to what relief he is entitled." The employer sought to justify Zwald's discharge on the ground that he had been guilty of five separate infractions of company rules, contained in a "Handbook For Guards" prepared by the employer and distributed to all employees at the time of their employment. The parties are in strong disagreement as to whether the handbook, which specifies certain violations  including Zwald's  as grounds for dismissal, is to be taken as a part of the collective bargaining agreement. But since the arbitrator's decision assumed Zwald's guilt of all five offenses, and since the employer does not here contest the ruling as to discharge, but only as to the award of back pay, the question is moot. The alleged infractions are: failure to make a routine check on various locations, failure to complete his log, parking his automobile on the premises, falling asleep on the job, and being under the influence of intoxicating liquor during working hours. The union did not deny any of the factual charges but raised as a defense what it termed "mitigating circumstances," namely, Zwald's illness and inability to phone in ill, and his assertion that his drinking was for medicinal purposes only. Its contention was that under the circumstances, including Zwald's prior record, discharge was an excessive penalty.
*306 After a full hearing, the arbitrator ruled that in the light of Zwald's advanced age (he was then 59), his satisfactory prior record, and his having earned, in the view of the hearer, the right to be excused for "one bad night," the employer did not have just cause for discharging him. The arbitrator further decided that a suspension of one month was a more appropriate penalty, and ordered Zwald fully reinstated as of one month from the date of discharge, with back wages  less any outside employment income received by Zwald  to be paid from the date of formal reinstatement.
Plaintiff immediately commenced an action in the Superior Court, asking that the award and opinion of the arbitrator be vacated. N.J.S. 2A:24-7. Defendant union counterclaimed, seeking confirmation of the award, and Zwald, subsequently added as a party defendant, counterclaimed demanding judgment confirming the award and awarding him back wages in the amount allegedly due. The trial judge, after consideration of the facts and pertinent documents, expressed strong disagreement with the arbitrator's "one bad night" philosophy but did not disturb his order restoring Zwald to his former position. However, the court held that the arbitrator's award of back wages constituted "a plain and palpable error in law and fact," and therefore set aside that portion of the order.
The instant appeal focuses solely on the question of the arbitrator's authority to award back wages. Plaintiff does not request that we reconsider the primary determination of the arbitrator that Zwald was not discharged for just cause. It may be noted, however, that we certainly imply no approval of the arbitrator's expression that Zwald was entitled to "one bad night," in the light of the nature of the employer's business and the essentiality of the employee's vigilance in the performance of the duties to which he was assigned.
In an effort to sustain the trial court's vacation of the back wages award, in the face of defendant's insistence that the arbitrator in no way abused or exceeded his powers, *307 plaintiff submits the following propositions: (1) the collective bargaining agreement between the union and the employer did not authorize arbitration of the question of an employee's right to back wages; (2) in accordance with the agreement, the issue of whether Zwald was entitled to back pay was not submitted to the arbitrator, and the terms of the particular submission should not be construed as including this question; and (3) the arbitrator exceeded and so imperfectly executed his powers that a mutual, final and definite award upon the subject matter submitted was not made, thus providing statutory justification for vacation of the award. N.J.S. 2A:24-8(d).
It is settled law that submission to arbitration is essentially a contract, that the parties thereto are bound by the arbitration only to the extent they have so agreed, and that they have every right to demand that the arbitrator be restricted within the terms of the agreement. Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1, 4 (E. & A. 1934); Public Utility Construction and Gas Appliance Workers of State of New Jersey Local No. 274 v. Public Service Co., 35 N.J. Super. 414, 419 (App. Div.), certification denied 19 N.J. 333 (1955); Mitchell v. Alfred Hofmann, Inc., 48 N.J. Super. 396, 405 (App. Div.), certification denied 26 N.J. 303 (1958). Plaintiff's initial assertion is, essentially, that the union-management agreement makes no reference to the question of back wages as an arbitrable issue, and that construction of the specific submission framed for the arbitrator must be construed in the light of the entire agreement. The pertinent portion of the agreement, according to plaintiff, is section 5, quoted above.
It is plaintiff's contention that the "matter" which may be submitted to arbitration is simply and solely the question of whether the employee's discharge is for just cause, and that if the issue of back wages had been intended by the parties to be arbitrable, then the contract would have contained a provision to the effect that where the arbitrator *308 finds an employee to have been wrongfully discharged, the employee shall be reinstated with or without back pay. Defendants respond by reasoning that the arbitrator's commission to render "final decision" included the imposition of a proper remedy, and that the terms of the submission, "* * * and if not, to what relief he is entitled," clearly encompassed the award under attack.
The scope of the arbitrator's power must be determined by consideration of the entire collective bargaining agreement. Cf. Botany Mills, Inc. v. Textile Workers Union, 50 N.J. Super. 18, 29 (App. Div.), certification granted 27 N.J. 320 (1958), appeal dismissed April 27, 1959. The agreement is to be construed according to the usual methods of contract interpretation; from the language of the parties, a mutual, reasonable, and meaningful design is sought. Kennedy v. Westinghouse Electric Corp., 16 N.J. 280, 287 (1954); see Casriel v. King, 2 N.J. 45, 50 (1959). The agreement will be fairly and liberally construed so as to give maximum effect to the intentions of the parties. Standard Oil Development Co. Employees Union v. Esso Research, etc., Co., 38 N.J. Super. 106, 115 (App. Div.), rehearing denied 38 N.J. Super. 293 (1955).
An examination of the express terms of the agreement before us discloses an utter absence of specific remedy for unjust discharge, or even a conferring of general remedial power upon the arbitrator. There is also missing the often-found provision that in the event of an unjust discharge, the employee will automatically be reinstated with back pay. Compare Rosa v. Transport Operators Co., 45 N.J. Super. 438, 441 (App. Div. 1957). It is noteworthy, in our estimation, that plaintiff nonetheless does not dispute the arbitrator's power to direct reinstatement of a wrongfully discharged employee; it is only the rendering of a retroactive reinstatement, with its accompanying award of back wages, that plaintiff contests.
Indeed, to give effect to the arbitrator's function and meaning to the parties' contractual purpose, it would seem *309 essential that the arbitrator be empowered to order  at least  reinstatement as of the date his decision is rendered. See Annotation, 70 A.L.R.2d 1055, 1059 (1960). The instant agreement appropriately illustrates a situation in which the implication of arbitral remedial authority should be extended even further. Section 5 required the union, when seeking arbitration of a discharge, to notify the employer of its intention so to proceed within a week after the discharge. The contemplated expeditious procedure was mutually disregarded and therefore waived, as the parties apparently sought to negotiate their differences and to avoid arbitration. The result was that the union's notice to arbitrate was not transmitted until about six weeks after the discharge, and the arbitration hearing was not held until five months thereafter.
The very nature of the union-management relationship, with the resolution of each dispute, in the eyes of the parties, setting a precedent for future conduct, indicates that protracted delays will precede final internal disposition or even arbitration of any controversy. In the light of considerations like these, and of the law's established reluctance to conclude that parties have intentionally created a right without a remedy, it is now generally agreed that even though a collective bargaining agreement merely forbids discharge without just cause, the arbitrator has implied authority  at least upon specific submission of the question of remedy  to order reinstatement with or without back pay. Niles-Bement-Pond Co. v. Local 405, UAW, 140 Conn. 32, 97 A.2d 898, 900 (Sup. Ct. Err. 1953); Samuel Adler, Inc. v. Local 584, etc., 282 App. Div. 142, 122 N.Y.S.2d 8 (App. Div. 1953). But see Refinery Employees Union of Lake Charles Area v. Continental Oil Co., 268 F.2d 447 (5 Cir. 1959), criticized in Note, 108 U. Pa. L. Rev. 614 (1960). This implication of remedial power, as we have noted, is justified on grounds of necessity. The successful functioning of the collective bargaining agreement is inevitably dependent upon enforcement of the rights and *310 obligations contained in the contract. Failure to make effective a decision undeniably committed to the arbitrator by the parties, that is, whether the discharge was wrongful as of the date it was effected, would place a premium on the employer's recalcitrance and invite dilatory tactics on his part to prolong the arbitration proceedings. See International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 145 v. Shapiro, 138 Conn. 57, 82 A.2d 345, 350 (Sup. Ct. Err. 1951); Cox, "Reflections Upon Labor Arbitration," 72 Harv. L. Rev. 1482, 1494 (1959).
Our statement of the policy reasons for implying remedial authority is consistent with, and indeed founded upon the presumed intention of the parties. Having conferred the power to arbitrate, we presume they conferred effective power. That they did not express their intention by including a broader arbitrability clause, see Botany Mills, Inc. v. Textile Workers Union, supra, 50 N.J. Super. 18, is explainable for reasons other than the narrow issue here involved; a general damages provision in the agreement might be considered an allowance of too much free play to the arbitrator; a damages section for each provision of the contract would be unduly cumbersome. Thus, it is reasonable to infer consent by the parties that the arbitrator award those remedies necessary to make the agreement viable. "This inferred consent is quite different from supplying a fatal lack of consent to arbitrate indefinite or unspecified issues * * *." Note, 108 U. Pa. L. Rev., supra, at p. 617.
We are in sympathy, however, with plaintiff's proposition that, whatever the conceivable scope of the collective bargaining agreement, the arbitrator is restricted to the agreed submission of the parties. But we find no aid for plaintiff in the application of this principle to the particular submission herein. Plaintiff emphatically reminds us that the issue submitted was labeled a "sole" question, i.e., the question of whether the discharge was justified, and urges that the phrase, "* * * to what relief he is entitled," *311 is not a submission of specific remedial power but rather a stock phrase, "akin to the general prayer for relief in equity."
Aside from the obvious distinction between a general equitable prayer for relief, usually urged collaterally in lieu of a more specific remedy, and an arbitration submission, where the language submitted determines the extent of the arbitrator's commission, Leslie v. Leslie, 50 N.J. Eq. 103 (Ch. 1892), we are convinced that the parties here intended to clothe the arbitrator with the power to fashion a remedy. Both the seven-month hiatus between the discharge and the arbitration and the lack of any express remedy in the entire agreement are preponderating, if not conclusive, factors in our construction of the "relief" phrase in the submission. We recognize that the parties to a collective bargaining agreement must be strapped in the positions they have voluntarily assumed. But we will not conclude, in the absence of a persuasive demonstration, and where no automatic remedy for unjust discharge is provided in the contract, that the parties' submission of "* * * to what relief he is entitled" is superfluous verbiage.
We see no conflict between our present determination and decisions of other courts. The more restrictive view of the arbitrator's power is generally explained in terms of a narrower submission. For example, in American Brass Co. v. Torrington Brass Workers Union, 141 Conn. 514, 107 A.2d 255, 259, 260 (Sup. Ct. Err. 1954), the Connecticut court, despite its prior holding in Niles-Bement-Pond Co. v. Local 405, UAW, supra, held that the State Board of Mediation could not order reinstatement with back pay to a wrongfully discharged employee. There the submission was simply: "Was Mr. D. discharged by the Company for just and proper cause?" The court's reasoning was that "there was no mention in the submission of the question whether D. was entitled to reinstatement with back pay. It was, therefore, not within the power of the board to decide that question."
*312 Plaintiff considers Gulf Oil Corp. v. Guidry, 327 S.W.2d 406 (Tex. Sup. Ct. 1959), persuasive authority for its position. But in Guidry, the sole issue submitted for arbitration was "whether the Company's discharge of Raymond W. Guidry, pipefitter's helper, was for `cause' within the meaning of Article XVII of the parties' contract." Moreover, the court indicated that it might well have taken a more flexible view of the arbitrator's authority had he simply ordered reinstatement with back pay. The court stated (at pages 408-409):
"It may well be, as Guidry suggests, that a decision favorable to Guidry of the only question submitted to arbitration would not have solved the controversy between the parties completely unless the arbitrators were permitted incidentally to restore him to his job with back pay. But the arbitrators did not restore him to his job with back pay. They demoted him to another job, denied him the right to bid for promotion for a period of six months, and awarded him back pay at the rate paid in the lower classification * * * we need not speculate on the legal effect to be given an award which would have done no more than decide favorably to Guidry the only question submitted or on the validity of an award which restored him to his job of pipefitter's helper with back pay at the rate provided for that job." (Emphasis added)
Our cases have held that an arbitrator's award will not be disturbed unless the arbitrator has made either a mistake of fact, apparent upon the face of the award or admitted by the arbitrator, or a mistake of law in a situation where the arbitrator clearly intended to decide according to law and misstated the legal rule. Collingswood Hosiery Mills v. American Federation of Hosiery Workers, 31 N.J. Super. 466 (App. Div. 1954); Carpenter v. Bloomer, 54 N.J. Super. 157, 168 (App. Div. 1959). It is manifest from the arbitrator's opinion accompanying his award that he was not purporting to apply any rule of law. Rather, he was attempting to balance the equities involved in order to arrive at a fair result, and this is what the parties bargained for in their agreement to arbitrate. See Leslie v. Leslie, supra, 50 N.J. Eq., at p. 108. *313 His award of back wages should therefore rest undisturbed. Cf. Anco Products Corp. v. TV Products Corp., 23 N.J. Super. 116, 124 (App. Div. 1952).
Plaintiff contends, however, that the award was properly vacated on the statutory ground that the arbitrator imperfectly executed his powers. N.J.S. 2A:24-8(d). This is based upon the assumption that whereas the company specified five separate and distinct offenses, the arbitrator disposed of only one.
A reading of the arbitrator's award and opinion discloses the false premise on which plaintiff's argument is predicated. The arbitrator made express reference to the five infractions in describing "the company's position." In summarizing "the union's position," he stated that the employee and the union admitted that Zwald was guilty of the alleged infractions but urged mitigating circumstances. Finally the arbitrator defined the issue presented as being "* * * whether the admitted conduct of William Zwald constitutes just cause for permanent discharge." (Emphasis added.) When the arbitrator stated that Zwald was entitled to "one bad night" in the context of his working career with plaintiff, he was obviously including all five infractions within the characterization, "one bad night." Having considered all five infractions in arriving at his equitable conclusion, the arbitrator was not required to make a separate and distinct finding as to each one.
It should also be noted that the arbitrator did not "imperfectly execute" his powers merely because he did not calculate the amount of back wages due Zwald. See Carhal Factors, Inc. v. Salkind, 5 N.J. 485, 489 (1950). This was a purely ministerial act; the amount was in fact later agreed upon by the parties.
Judgment reversed with direction for entry of order reinstating award of arbitrator.