OHIO CASUALTY INSURANCE COMPANY, PLAINTIFF-RESPONDENT, v. CORNELL J. BENSON, DEFENDANT-APPELLANT.

Argued May 4, 1981—Decided July 23, 1981.

---

*Steven K. Kudatzky* argued the cause for appellant (*Tomar, Parks, Seliger, Simonoff & Adourian*, attorneys; *Steven K. Kudatzky* and *Michael A. Kaplan*, on the brief).

*James A. Mullen, Jr.* argued the cause for respondent (*Montano, Summers, Mullen & Manuel*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The sole issue is whether, under the arbitration clause of an uninsured motorist endorsement, the question of the existence of a "phantom" hit and run driver should be decided by a court, as a preliminary matter, or by an arbitrator.

We hold that, under the policy in this case, the issue is not a question for the court, but one, together with issues of negligence and damages, for the arbitrator.

I

On December 7, 1977, a car driven by defendant, Cornell Benson, went off the road and crashed into a tree. Benson filed a claim for benefits under the uninsured motorist endorsement of an automobile insurance policy issued to him by plaintiff Ohio Casualty Insurance Company (Ohio Casualty). Benson claims his damages were caused by a "phantom" hit and run driver who had forced him off the road without hitting his vehicle. Ohio Casualty and Benson could not agree on the damages payable under the uninsured motorist endorsement, so Benson sought arbitration under the policy.

The arbitration clause of the policy provided:

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle ... or do not agree as to the amount of payment which may be owing under this insurance, then ... the matter or matters upon which such person and the company do not agree shall be settled by arbitration ....

In addition, the coverage clause of the endorsement states that "[t]he company will pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle ..., provided ... determination as to whether the insured ... is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured ... and the company or, if they fail to agree, by arbitration." With respect to compensation for bodily injury, the policy includes hit and run drivers within its definition of "uninsured highway vehicle."

After Benson requested arbitration, Ohio Casualty instituted a civil action seeking a declaratory judgment that the endorsement did not cover the accident. Ohio Casualty also sought an injunction against arbitration. Benson moved to dismiss the complaint, but the trial court denied the motion. The Appellate Division denied, but we granted leave to appeal. 85 *N.J.* 491 (1980). We now reverse the trial court and grant the motion to dismiss the complaint.

## II

This Court has never expressly considered whether the liability of a hit and run driver to the insured subsumes the issue of the existence of a hit and run driver. *Cf. Perez v. American Bankers Ins. Co.*, 81 *N.J.* 415, 417 (1979) (parties agreed to submit coverage issue to arbitration); *In re Grover*, 80 *N.J.* 221, 228–229 (1979) (parties did not object to arbitration of coverage issue although Court suggests that coverage normally would not be arbitrable). The Appellate Division, however, has concluded "that questions of coverage, even when depending for their resolution upon pure questions of fact, equally related to the concededly arbitrable questions of the insured's liability and fault, must be determined in a court of law, before the arbitration (if there is to be any) is commenced." *Government Employees Ins. Co. v. Bovit*, 142 *N.J.Super.* 268, 273 (1976), certif. den. 71 *N.J.* 502 (1976). *See New Jersey Mfrs. Ins. Co. v. Franklin*, 160 *N.J.Super.* 292, 297 (App.Div.1978) (question whether other driver is uninsured is question of coverage to be determined by court); *Satzinger v. Satzinger*, 156 *N.J.Super.* 215, 220 (App.Div. 1978) (only issues of uninsured's negligence and amount of damages are to be determined by arbitration); *Keystone Ins. Co. v. Bowman*, 138 *N.J.Super.* 544, 548 (App.Div.1976) (question whether driver is uninsured where injured insured is co-employee passenger arbitrable under Pennsylvania law but not arbitrable in New Jersey). *Cf. Korshalla v. Liberty Mut. Ins. Co.*, 154 *N.J.Super.* 235, 239 (Law Div.1977) (issue whether passenger met no-fault dollar threshold arbitrable). In *Bovit, supra*, the

Appellate Division held that the existence of a "phantom" hit and run driver was an issue of coverage and thus "must . . . be resolved by a court of law before any arbitration proceedings can commence." 142 *N.J.Super.* at 274.

Many courts in other states have construed the arbitration clause as reposing in the arbitrator primary jurisdiction over some or all issues of coverage. *See Van Tassel v. Superior Court of Fresno Cty.,* 12 *Cal.*3d 624, 526 *P.*2d 969, 116 *Cal.Rptr.* 505 (1974) (arbitrator decides all jurisdictional facts); *Orpustan v. State Farm Mut. Auto. Ins. Co.,* 7 *Cal.*3d 988, 500 *P.*2d 1119, 103 *Cal.Rptr.* 919 (1972) (arbitrator decides if there was physical contact when contact is a statutory prerequisite to uninsured motorist coverage); *McGovern v. Middlesex Mut. Ins. Co.,* 359 *Mass.* 443, 269 *N.E.*2d 445 (1971) (arbitrator decides all coverage issues); *Employers' Fire Ins. Co. v. Garney,* 348 *Mass.* 627, 205 *N.E.*2d 8 (1965) (arbitrator decides whether "a particular situation of fact comes within the policy provisions" so as to avoid piecemeal litigation and court congestion); *Detroit Auto. Inter-Ins. Exch. v. Spafford,* 62 *Mich.App.* 365, 233 *N.W.*2d 283 (1975) (arbitrator decides coverage issues when coverage issues are not expressly exempted from arbitration by the policy); *Maryland Cas. Co. v. McGee,* 32 *Mich.App.* 539, 189 *N.W.*2d 44 (1971) (arbitrator decides all issues of disagreement between insured and insurance company); *Dunshee v. State Farm Mut. Auto. Ins. Co.,* 303 *Minn.* 473, 228 *N.W.*2d 567 (1975) ("legally entitled" ambiguous, arbitrator decides scope of arbitration clause); *Northwestern Security Ins. Co. v. Clark,* 84 *Nev.* 716, 448 *P.*2d 39 (1968) (arbitrator can decide issue of law as to coverage and bind insurers when insurers submit issue to arbitration); *Firemen's Ins. v. Petrie,* 10 *Ohio Misc.* 188, 39 *Ohio Op.*2d 286, 226 *N.E.*2d 808 (1966) (arbitrator decides whether injury was caused by hit-skip accident involving physical contact); *Fawyer v. Allstate Ins. Co.,* 267 *Or.* 292, 516 *P.*2d 743 (1973) (arbitrator decides whether other vehicle was "phantom vehicle" within contract's definition of uninsured vehicle); *Allstate Ins. Co. v. McMonagle,* 449 *Pa.* 362, 296 *A.*2d 738 (1972) (arbitrator decides whether policy was in force on day of accident); *National Grange Mut.*

*Ins. Co. v. Kuhn*, 428 *Pa.* 179, 236 *A*.2d 758 (1968) (all matters of dispute are to be decided by arbitration). The rationale of these cases follows from the impracticality of bifurcating the decision making process in uninsured motorist claims. In justifying expanded construction of the arbitration clause, these courts have sometimes found that the clause is ambiguous and thus should be construed as allowing arbitration. An expansive approach is supported by the public policy favoring arbitration [1] and by the construction of ambiguous insurance contracts most favorable to the insured.[2] In addition, these courts have asserted that a limited arbitrability approach conflicts with the strong public policy against clogging the courts with piecemeal litigation.

---

[1] For New Jersey authority relating to the policy favoring arbitration, see *N.J.S.A.* 2A:24–1 *et seq.* ("a written agreement to submit . . . any existing controversy to arbitration . . . shall be valid, enforceable and irrevocable"); *Barcon Associates, Inc. v. Tri-County Asphalt Corp.*, 86 *N.J.* 179 (1981); *Brick Tp. Municipal Utilities Auth. v. Diversified R. B. & T. Constr. Co.*, 171 *N.J.Super.* 397, 402 (App.Div.1979) ("public policy favors the arbitration process, and contracts should be read liberally to find arbitrability if reasonably possible"); *Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp.*, 131 *N.J.Super.* 159, 166 (App.Div.1974) (*N.J.S.A.* 2A:24–1 *et seq.* reflects strong public policy in favor of arbitration); *Keppler v. Terhune*, 88 *N.J.Super.* 455, 461 (App.Div. 1965) ("Arbitration is favored by our courts"); *Carpenter v. Bloomer*, 54 *N.J.Super.* 157, 162 (App.Div.1959) (arbitration is favored because it is a speedy, inexpensive, expert and amicable method of settling disputes); *James Stewart Polshek & Assocs. v. Bergen Cty. Iron Works*, 142 *N.J.Super.* 516, 521–522 (Ch.Div.1976) (settlement by arbitration is favored by our courts).

[2] For a discussion of this policy consideration, see *Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co.*, 60 *N.J.* 375, 377 (1972) (ambiguous policy to be resolved against insurer); *Butler v. Bonner & Barnewall, Inc.*, 56 *N.J.* 567, 576 (1970) (if policy will support two meanings, interpretation favoring coverage should be applied); *Bowler v. Fidelity & Cas. Co.*, 53 *N.J.* 313, 326 (1969) (courts give insured benefit "of any construction . . . which can be said fairly to represent the protection extended to him"); *Allen v. Metropolitan Life Ins. Co.*, 44 *N.J.* 294, 305 (1965) (insurance contract is contract of adhesion and its terms are to be construed strictly against insurer; when ambiguous, interpretation most favorable to insured should be used); *Travelers Indem. Co. v. Mongiovi*, 135 *N.J.Super.* 452, 457 (App.Div.1975) (ambiguity should be interpreted in favor of insured); 13 *J. Appleman, Insurance Law and Practice* § 7481 at 542–543 (1976) ("That interpretation of a casualty insurance policy which is most favorable to the insured will be adopted, especially where some ambiguity exists therein").

A leading commentator has criticized the limited arbitrability construction of the arbitration clause presented in this case:

> Allowing the insurance company to stay the arbitration pending the determination of whether coverage exists means that a claimant may be forced through a multiple adjudicative process often including three stages: first, a judicial hearing to determine whether the arbitration should be stayed, then a judicial resolution of whether coverage exists, and finally an arbitration to ascertain the liability of the uninsured motorist for purposes of the uninsured motorist coverage . . . . [A]n adjudicative process which subjects claimants to a series of two or three separate hearings is certainly suspect, and probably undesirable.
>
> The system also negates what is generally urged as one of the principal advantages of arbitration: the avoidance of delay inherent in the use of the court system. [*A. Widiss, A Guide to Uninsured Motorist Coverage* § 6.23 at 208–209 (1969)].

In addition, Professor Widiss states that the limited arbitrability approach "conflicts with the generally accepted proposition that once a controversy is brought before a tribunal, it is desirable to litigate and dispose of all the related issues between the parties . . . ." *Id.* § 6.18 at 203.

Many other courts, however, have concluded that resolution of coverage questions under an uninsured motorist endorsement is for the courts and that only the issues of the uninsured's liability and damages should be submitted to an arbitrator. *See State Farm Fire & Cas. Co. v. Rossini*, 14 *Ariz.App.* 235, 241, 482 *P.2d* 484, 490 (1971) (coverage issues are not within the scope of uninsured motorist endorsement arbitration provision), rev'd and remanded on other grounds, 107 *Ariz.* 561, 490 *P.2d* 567 (1971); *International Serv. Ins. Co. v. Ross*, 169 *Colo.* 451, 464, 457 *P.2d* 917, 924 (1969) (arbitration clause limited to liability and damages, does not require arbitration of alleged failure to comply with policy provisions pertaining to exclusions, proof of claim and medical reports, and so-called other insurance); *Frager v. Pennsylvania Gen. Ins. Co.*, 155 *Conn.* 270, 273–277, 231 *A.2d* 531, 533–534 (1967) (whether there was contact so that phantom vehicle is within policy's definition of "uninsured automobile" nonarbitrable question of coverage); *Midwest Mut. Ins. Co. v. Santiesteban*, 287 *So.2d* 665, 667 (Fla.Sup.Ct.1973) ("A challenge of *coverage* is exclusively a *judicial question* and may not be decided by arbitration"); *Flood v. Country Mut. Ins. Co.*, 41 *Ill.*

2d 91, 93, 242 *N.E.2d* 149, 151 (1968) (question whether deceased covered by policy is for court not for arbitration); *Liddy v. Companion Ins. Co., Ind.App.*, 390 *N.E.2d* 1022, 1028 (Ct.App. 1979) (question of amount of payment from insurance company not arbitrable); *In re Rosenbaum*, 11 *N.Y.2d* 310, 312–316, 183 *N.E.2d* 667, 668–669, 229 *N.Y.S.2d* 375, 377–379 (Ct.App.1962) (issue whether motorist insured not arbitrable); *Hartford Accident & Indem. Co. v. Novak*, 83 *Wash.2d* 576, 585, 520 *P.2d* 1368, 1374 (1974) (question of coverage not for arbitration); Annot., "What issues are arbitrable under arbitration provision of uninsured motorist insurance," 29 *A.L.R.3d* 328 (1970). *See also Grover, supra*, 80 *N.J.* at 228–229 (dicta suggests arbitration is limited to issues of uninsured's liability and damages). Underlying these cases are the principles that the parties have a right to rely on the terms of their agreement and that, absent an express agreement to the contrary, interpretation of the scope of a contractual provision is for the courts. *See M. Domke, The Law & Practice of Commercial Arbitration* § 12 at 99 (1968); 5 *Am.Jur.2d, Arbitration and Award*, § 15 at 531.

The present case, however, does not present the broad issue of whether arbitrators can decide questions of coverage. Furthermore, we accept the proposition that "the arbitrator's authority is circumscribed by whatever provisions and conditions have been mutually agreed upon." *Grover, supra*, 80 *N.J.* at 229. Like our dissenting colleagues, we also conclude that the issue of the uninsured's liability to the insured is arbitrable. Our difference with the dissent is that it would not permit arbitration of the issue of the existence of a hit and run driver. In a similar case, this Court found that the issue of the existence of a hit and run driver could be arbitrated when the parties had agreed to arbitrate whether there had been a contact or noncontact accident. *Perez, supra*, 81 *N.J.* at 420. As Justice Sullivan noted: "It is difficult to see how the arbitrator could decide whether the accident was a contact or noncontact accident without deciding whether or not a hit-and-run vehicle was involved in the first place." *Id.* As in *Perez*, we believe that

the arbitrable issue subsumes the subordinate issue, whether a hit and run driver existed. Common sense and practicality militate against a technical construction that would cause unnecessary delay in the resolution of the insured's claim. The logic of fairness and economy suggests a one-stop proceeding. To the extent that *Bovit* conflicts with our holding, we overrule *Bovit.*

A modern system of judicial administration should provide not only for the efficient disposition of cases within the judicial system, but also should contemplate alternative methods of dispute resolution outside the system. One such alternative method is arbitration. Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration. *See generally* Ford Foundation, New Approaches to Conflict Resolution 44–45 (May, 1978). Thus, our construction of the scope of arbitration clauses is consistent with the policy of favoring commercial arbitration as a speedy and inexpensive method for settling disputes. *See Carpenter v. Bloomer*, 54 *N.J.Super.* 157, 162 (App.Div.1959); 196 n. 1 *supra.*

We reverse the judgment of the Chancery Division and grant the motion to dismiss the complaint.

SCHREIBER, J., dissenting.

It has long been settled that the source of an arbitrator's jurisdiction and authority is the agreement of the parties. See, *e. g., Kearny PBA Local 21 v. Town of Kearny*, 81 *N.J.* 208, 217 (1979); *In re Arbitration Between Grover*, 80 *N.J.* 221, 230–31 (1979). The majority has not only maligned that basic principle of arbitration law, but it has also effectively overruled a decision of this Court rendered only two years ago interpreting this identical insurance policy language. See *Grover*, 80 *N.J.* at 231–33.

It is axiomatic that in the absence of any statutory or constitutional requirement compelling arbitration the parties need arbitrate only those issues that they have agreed to arbitrate.

This proposition is self-evident. It is based upon the fundamental notion that the arbitration's existence depends on the parties' agreement. *Ridgefield Park Ed. Assn. v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144, 155 (1978); *Goerke Kirch Co. v. Goerke Kirch Holding Co.*, 118 *N.J.Eq.* 1 (E. & A. 1935); *Wm. J. Burns, Inc. v. N.J. Guards Union, Inc.*, 64 *N.J.Super.* 301, 308 (App.Div.1960), certif. den., 34 *N.J.* 464 (1961); *Carpenter v. Bloomer,* 54 *N.J.Super.* 157, 162 (App.Div.1959); *Leslie v. Leslie,* 50 *N.J.Eq.* 103, 107–08 (Ch.1892), aff'd 52 *N.J.Eq.* 332 (E. & A. 1894); 5 *Am.Jur.* 2d, *Arbitration and Award,* § 11 at 527–28. Justice Heher wrote in *Goerke Kirch*:

> The authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, supplemented by the pertinent provisions of the Arbitration act, and no further. They have a right to stand upon the precise terms of their contract. [118 *N.J.Eq.* at 4]

The efficacy of our arbitration statute depends upon that contract, *N.J.S.A. 2A:24*–1 through –5,[1] and an award must be vacated where the arbitrator exceeds his powers, *N.J.S.A.* 2A:24–8. The Supreme Court has put it this way:

> [The] award is legitimate only so long as it draws its essence from the collective bargaining agreement. [*United Steelworkers v. Enterprise Corp.,* 363 *U.S.* 593, 597, 80 *S.Ct.* 1358, 1361, 4 *L.Ed.*2d 1424, 1428 (1960)]

The automobile policy in question contained the identical language that we discussed in *Grover,* 80 *N.J.* at 231–33. There, as here, the policy contained an uninsured motorist provision that required the insurance carrier to pay all sums that the insured was legally entitled to recover as damages from the owner of an "uninsured highway vehicle." *Id.* at 225. As we stated in *Grover* the *coverage* issue centers about the definition of an "uninsured highway vehicle." An uninsured highway vehicle is defined as a highway vehicle that does not have coverage or is a "hit-and-run" vehicle. A hit-and-run vehicle in turn is defined in the policy, insofar as pertinent to this case, as one that causes an accident without physical contact with the

---

[1] Each of these sections refers to the written contract and governs enforceability, who may submit to arbitration, order for arbitration, stay of proceedings, and selecting the arbitrators.

vehicle in which the insured was riding, provided (1) the identity of the operator or owner is unknown, (2) the accident was reported to the police within forty-eight hours and a verified statement filed with the insurance company within thirty days thereafter, and (3) at the company's request, the insured makes available for inspection the vehicle occupied by the insured at the time of the accident. In *Perez v. American Bankers Insurance Co. of Florida*, 81 *N.J.* 415 (1979), we struck down a fourth requirement in the policy that required corroboration of the accident by competent evidence other than the testimony of the claimant. We did not pass upon the validity of the three remaining provisions.[2]

The policy provides for arbitration of two issues: (1) whether the accident was due to the fault of the other party involved in the accident, and (2) if so, the dollar amount of damages. The difference between the coverage and arbitrable issues was expressly recognized in *Grover, supra.* In that case when both parties submitted the coverage as well as the other issues to the arbitrator, we held that the arbitrator's authority to decide the coverage issue had been extended by the mutual agreement of the parties. 80 *N.J.* at 229. However, we set aside the award because the arbitrator had not complied with the terms and conditions of the policy.

Contrary to the implicit suggestion of the majority, sending the controversy to the arbitrator before deciding coverage will not necessarily resolve the entire controversy. Of course, if the arbitrator finds that the hit-and-run vehicle was not legally responsible for the accident, that would end the matter. That decision could be based on the conduct of the driver of the other vehicle or perhaps the claimant's failure to satisfy the arbitrator of the existence of that vehicle. However, if the arbitrator reaches the opposite conclusion and finds that the hit-and-run

---

[2]The parties have not raised, briefed or discussed the validity of these provisions.

vehicle caused and was legally responsible for both the accident and the claimant's damages, the coverage issue may not be concluded. A determination that the alleged tortfeasor was responsible for a "no contact" accident does *not* decide whether the hit-and-run vehicle satisfies the policy definition. For example, coverage requires that the accident be reported to the authorities within forty-eight hours and that a report be made to the insurance company within thirty days thereafter. Evidence as to these issues may not even be presented to the arbitrator, who could find liability without considering those factors or, even if he found noncompliance, might conclude there was legal responsibility for the accident.

Here the plaintiff insurance carrier sought a declaratory judgment of no coverage and a restraint against arbitration. The trial court then had a choice. It could have stayed the arbitration and decided the coverage issue or it could have permitted the arbitration to proceed and awaited the outcome of that proceeding. If it selected the latter course, then its next move would depend on the arbitrator's decision. If the arbitrator found no legal liability, the action would terminate (assuming the award was valid). If the arbitrator found responsibility, then the court might still have before it (assuming again the validity of the award) the question whether the accident involved a hit-and-run vehicle, *as defined in the policy.*[3]

---

[3]The majority misstates my position when it asserts that the dissent "would not permit arbitration of the issue of the existence of a hit and run driver." *Ante* at ——. As I pointed out in the text, this issue *may* in fact be decided in the arbitration when the arbitrator determines the liability of the driver of the other car involved. It is also possible that coverage may *not* be decided even if the arbitrator finds the hit-and-run no-contact vehicle responsible.

The majority misconceives the import of *Perez.* In *Perez* the parties had agreed to submit the issue of coverage to the arbitrator. When the hearing was held the policy requirement of corroboration in a hit-and-run no-contact accident was believed valid. The arbitrator found that the accident was a no-contact hit-and-run accident and that the claimant had not corroborated the happening of the accident. Since upon appeal the award was to be set

When the plaintiff insurance company filed its complaint and moved to stay the arbitration, the trial court in exercising its discretion could have denied the motion and permitted the arbitration to proceed first. In taking such an action the court could have reasonably believed under the circumstances that such a procedure might expedite the matter. On the other hand, it might have reached an opposite conclusion. On the basis of the facts presented on this record, I cannot conclude that the trial court mistakenly exercised and abused its discretion. Therefore, I would affirm.

Justice CLIFFORD joins in this opinion.

*For reversal*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, HANDLER and POLLOCK—5.

*For affirmance*—Justices CLIFFORD and SCHREIBER—2.

---

aside (the corroboration requirement in the insurance policy having been held invalid), the argument was made that the arbitrator's findings of fact that it was a no-contact accident without corroboration should stand in subsequent proceedings. In rejecting that contention Justice Sullivan stated in was difficult to see how the arbitrator could decide whether the accident was a contact accident without resolving whether a hit-and-run vehicle was involved. We vacated the award and suggested a new arbitration could be held to adjudicate liability of the third party (including the possibility that the third party was a phantom). *No* issue of coverage dependent on the insurance policy requirement of corroboration remained and coverage predicated on the existence of a hit-and-run vehicle was properly arbitrable because the parties had agreed in the first instance to arbitrate the coverage question. *Perez,* which was decided less than five months after *Grover,* cites *Grover* approvingly, and in no way modified its holding that the insurance policy did not provide that the issue of coverage was arbitrable.